COUNTY DEPARTMENT OF PUBLIC WELFARE OF ALLEN COUNTY ET AL. *v.* POTTHOFF.

[No. 27, 738.   Filed November 4, 1942.   Rehearing denied December 22, 1942.]

*George N. Beamer,* Attorney General, *James P. Wason,* Deputy Attorney General, and *George L. Diven,* of Indianapolis, for appellants.

*James P. Murphy,* of Fort Wayne (*James K. Rose,* of Fort Wayne, of counsel), for appellee.

*Ben J. Brown* and *Remster A. Bingham,* both of Indianapolis, and *Walter F. Bossert,* of Liberty, *amici curiae.*

SHAKE, J.—On February 2, 1940, David L. Trisch made an application for old age assistance to the County Department of Public Welfare of Allen County. The application contained the following offer:

"For any assistance granted to me I hereby agree to reimburse the State of Indiana, the county of Allen, and any other county or counties of the State from any and all real or personal property which I now own or may hereafter acquire, and I further agree to submit to the County Department of Public Welfare such additional properly acknowledged agreements or instruments as may be required to carry out this agreement. I also agree to assign as collateral security for such agreement such part of my personal property as the County Department shall require in accordance with the rules and regulations of the State Department of Public Welfare, under the provisions of the Welfare Act of 1936 as amended. I further agree to all other requirements and provisions of said act, and any rules and regulations issued thereunder.

"I understand and agree that any assistance granted me, together with interest at 3%, becomes a lien against me and upon all my real property, whether now owned or subsequently acquired by me, and that such assistance, together with interest

at 3% also becomes a preferred claim against my estate."

Subsequently, on February 29, 1940, the County Department of Public Welfare of Allen County made an award to said applicant in the amount of $28 per month to begin on March 1, 1940, which award was duly recorded in the office of the recorder of Allen County on March 4, 1940. Between March 1, 1940, and January 2, 1941, when David L. Trisch died, the county department paid him under said award $308. This action was begun by the filing of a claim, reciting the above facts, against the estate of said decedent for the recovery of the amount paid under said award with interest. The appellee demurred to the claim for want of facts. The demurrer was sustained and the appellants refused to plead further, whereupon judgment was entered in favor of the estate. This appeal followed.

The facts recited in the claim would be sufficient to make out a case of liability against the appellee estate under the provisions of chapter 3, Acts 1936 (Spec. Sess.), but § 38 thereof was amended and §§ 44, 45, 46, 47, and 48 were repealed by chapter 201, Acts 1941. By said act of 1941 all of the provisions of the act of 1936 relating to a lien for old age assistance, the agreement of the applicant to reimburse the State, the transfer of property to the county department, and recovery from the recipient or his estate were stricken out.

The appellants say that the State, the counties thereof, and the federal government had vested and contractual interests in the reimbursement agreements in existence when the act of 1941 went into effect, and they rely upon Section 10 of Article 1 of the Constitution of the United States and Section 24 of Article 1 of the Constitution of Indiana, which prohibit the passage of any

law impairing the obligation of contracts; upon 1 R. S. 1852, ch. 92, § 2; § 1-302, Burns' 1933; § 8, Baldwin's 1934; which provides that no rights vested under existing laws shall be affected by the repeal thereof; and upon Acts 1877 (Spec. Sess.), ch. 36, § 1; § 1-307, Burns' 1933; § 13, Baldwin's 1934; which says that the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide.

The appellants conceded in oral argument at the bar of this court that if their theory is sound, that is, if a contract with a recipient of old age assistance entered into under the act of 1936 is unaffected by the act of 1941, then the liability under such contract is continuing and applies to benefits subsequently paid. The appellee says this would result in two classes of citizens receiving old age assistance at the same time, one of which would be burdened to reimburse the State, while the other would be free from any such exaction, and that such a situation would be intolerable by reason of Section 23 of Article 1 of the State Constitution, which prohibits the General Assembly from granting to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all. The appellee asserts, also, that no contractual or vested rights are involved since there is no impediment to the sovereign discharging or releasing a liability in its favor; that the federal government has no interest in the subject-matter; and that § 1-307, Burns' 1933, § 13, Baldwin's 1934, saving actions for penalties, forfeitures, or liabilities from the effect of a repeal is not applicable to the case.

Since assistance was paid the appellee's decedent from the execution of the contract until his death on

January 2, 1941, we are not concerned with what his rights might have been had payments been withheld from him. While the contract clause of the Constitution protects parties dealing with the State, it does not, of course, affect the validity of statutes releasing obligations due the State. 16 C. J. S., Constitutional Law, § 285, p. 714. *Miller* v. *Henry* (1912), 62 Ore. 4, 124 P. 197, 41 L. R. A. (N. S.) 97. *State ex rel. Arpin* v. *George* (1913), 123 Minn. 59, 142 N. W. 945. There is, consequently, no question as to the impairment of the obligation of a contract with the State involved in this case. The same may be said as to vested rights. A State has no vested rights which are immune from its legislative control. 16 C. J. S., Constitutional Law, § 243, p. 670. *People* v. *Frisbie* (1864), 26 Cal. 135. *State* v. *Dexter* (1872), 10 R. I. 341. The case of *County of Los Angeles* v. *Jessup* (1938), 11 Cal. (2d) 273, 78 P. (2d) 1131, is distinguishable. It was there held that an act of the legislature undertaking to release reimbursement liens arising out of the administration of an old age assistance law was invalid because of a provision in the constitution of that state prohibiting a gift of public money or thing of value. There is no comparable prohibition in the Constitution of Indiana, except as to religious and theological institutions. Section 6, Article 1, Constitution of Indiana.

Our public welfare act must, of course, be read in connection with the Social Security Act of the Congress of the United States of August 14, 1935 (Title 42, § 301 to § 306, USCA). Together, these acts constitute what has come to be known as grant-in-aid legislation under which, in this instance, the cost of old age assistance is borne as follows: 50 per cent by the federal government, 30 per cent by the state, and 20

per cent by the counties. Arguing from this premise, the appellants declare that the federal government and the counties of this State have contractual and vested interests in reimbursement agreements with recipients of old age assistance entered into under our act of 1936 which the General Assembly could not forego.

We find nothing in the act of Congress that requires the states to exact reimbursement from the estates of recipients of old age assistance or which precludes the states from releasing such exactions as may have been previously acquired, though § 51 of our act of 1936, still in effect, does provide:

"The state department (of public welfare) shall also certify to the auditor of state a statement of the amounts received from recipients or from their estates. On amounts collected from estates, the state department·shall specify the sum to which the United States government shall be entitled which in every case shall be fifty per .cent of the net amount collected by reason of old age assistance, exclusive of funeral expenses, . . . The amount due the United States shall be paid promptly from the old age assistance account of the general fund of the state treasury to the United States government, upon the order of the state department and the audit and warrant of the auditor of state."

The above provision is in complete harmony with the theory that it is applicable only to the distribution of funds recovered on account of fraud or error. *Worcester* v. *Quinn* (1939), 304 Mass. 276, 23 N. E. (2d) 463, 125 A. L. R. 707.

*Bolivar Twp. Bd. of Fin. of Benton Co.* v. *Hawkins* (1934), 207 Ind. 171, 189, 191 N. E. 158, 165, 96 A. L. R. 271, 282, is authority for the proposition that a civil township "is a political subdivision of the state, and a creature of the legislature and acts

as the agent of the state. It acts pursuant to statutory authority. The real contracting party is the state and it has been held in many cases that the state may withdraw the power to so contract, that it may release the liability created and without the consent of the agent. And by the great weight of authority this does not amount to the impairment of contracts as provided for in the Federal and State Constitutions." In *State ex rel. Jackson, Attorney General* v. *Middleton* (1939), 215 Ind. 219, 19 N. E. (2d) 470, 20 N. E. (2d) 509, this rule was applied to county officers and county funds, and in *Kassabaum, Admr.* v. *Bd. of Fin., Town of Lakeville* (1939), 215 Ind. 491, 20 N. E. (2d) 642, the doctrine of the Bolivar case was reaffirmed and declared to be the settled law of the State. No good purpose would be served in re-examining the authorities which were so thoroughly considered in the Bolivar, Middleton, and Kassabaum cases. We think it may be said, without extending the rule declared in those cases, that counties are political subdivisions of the State and that as such they have no vested or contractual rights in the disposition of funds derived from general taxation therein which are superior to the public policy of the State as declared by the Legislature.

This case, therefore, resolves itself into one of statutory construction and three possible conclusions suggest themselves: (1) All existing lien contracts were undisturbed by the act of 1941 leaving the State entitled to recover subsequent as well as prior payments; (2) existing liens were preserved so as to entitle the State to recover assistance paid prior to the adoption of the act of 1941, but not afterwards; and (3) all outstanding reimbursement contract liens were completely canceled by the act of 1941, as effectively as though they

had never been created. The appellants contend for the first proposition; the appellee for the third.

It is a cardinal principle that when there are two or more possible constructions of a statute that one will be adopted, if reasonable, which will rescue the act from unconstitutionality. *Miles* v. *Dept. of Treasury* (1935), 209 Ind. 172, 199 N. E. 372, 101 A. L. R. 1359. This rule requires us to reject the first of the above propositions, urged by the appellants. There is no more jealously guarded principle of constitutional law than that which forbids class legislation. In *School City of Elwood* v. *State, ex rel.* (1932), 203 Ind. 626, 635, 636, 180 N. E. 471, 474, 81 A. L. R. 1027, 1033, this court said:

"The classification to be constitutional must be reasonable and natural, not capricious or arbitrary; it must embrace all who naturally belong to the class, and there must be some inherent and substantial difference germane to the subject and purpose of the legislation between those included within the class and those excluded."

In *McErlain, Tr.* v. *Taylor* (1934), 207 Ind. 240, 243, 244, 192 N. E. 260, 262, 94 A. L. R. 1284, 1286, it was further observed:

"But if there are other general classes situate in all respects like the class benefited by the statute, with the same inherent needs and qualities which indicate the necessity or expediency of protection for the favored class, and legislation discriminates against, casts a burden upon, or withholds the same protection from the other class or classes in like situation, it cannot stand."

We cannot justify such an arbitrary classification as would authorize old age assistance to be extended after March 11, 1941, to the members of one group of citizens, upon the condition that the State retain a lien on their

properties, while, at the same time, assistance may be extended to those of a like group without any such requirement.

The question remains whether the change in legislative policy brought about by the enactment of the act of 1941 is retroactive and operates to discharge the liabilities then existing. At common law when a statute was repealed it was considered, except as to transactions passed and closed, as if it had never existed; and the repeal of a statute giving a right of action that did not exist at common law took away the right of action if it had not proceeded to final judgment. *M'Quilkin* v. *Doe, on the Demise of Stoddard* (1847), 8 Blackf. 581. *Taylor* v. *Strayer* (1906), 167 Ind. 23, 78 N. E. 236, 119 Am. St. Rep. 469. The rule was not applicable, however, to rights that had become contractual or vested and which were, therefore, no longer dependent on the statute.

If liability exists for the recovery of old age assistance paid the decedent in his lifetime, it must be on account of the saving effect of § 1-307, Burns' 1933, § 13, Baldwin's 1934, which provides that "the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide; . . ." *In Great Northern Ry. Co.* v. *United States* (1908), 208 U. S. 452, 465, 52 L. Ed. 567, 575, 28 S. Ct. 313, 316, a federal statute precisely like § 1-307, Burns' 1933, § 13, Baldwin's 1934, was considered. Mr. Justice White speaking for the court said:

> "As the section of the Revised Statutes in question has only the force of a statute, its provisions cannot justify a disregard of the will of Congress as manifested, either expressly or by necessary implication, in a subsequent enactment. But, while

this is true, the provisions . . . are to be treated as if incorporated in and as a part of subsequent enactments, and therefore under the general principles of construction requiring, if possible, that effect be given to all the parts of a law the section must be enforced unless either by express declaration or necessary implication, arising from the terms of the law, as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions. . . ."

Section 1-307 may not prevail, therefore, over a necessary implication that the Legislaure clearly intended to discharge all reimbursement liens. A matter or thing found to be within the intention of the Legislature by necessary implication has the same effect as if expressed in the statute. *Hyland* v. *Rochelle* (1913), 179 Ind. 671, 100 N. E. 842.

In *Edger* v. *The Board of Commissioners of Randolph County* (1880), 70 Ind. 331, it was observed that where a statute has been enacted which is susceptible of several widely different constructions there is no better means for ascertaining the will and intention of the Legislature than that which is afforded by the history of the statute as found in the journals of the two legislative bodies. The legislative history, of the act of 1941 discloses that the bill which became the act was introduced in the House of Representatives, which adopted it in the precise form in which it was ultimately enacted into law. In the Senate a committee recommended and that body adopted amendments, which would have preserved existing old age assistance liens. (Senate Journal, 82nd General Assembly, p. 1013.) Subsequently, however, the bill was recommitted to a committee of one with specific instructions to restore it to the form in which it had passed the House. (Senate Journal, 82nd General Assembly, p. 1152.) So re-amended, the bill passed the Senate, after which the

House concurred. (House Journal, 82nd General Assembly, p. 1336.) On the record both houses were charged with knowledge of the effect of the bill which became the act upon the approval of the Governor. This indicates quite conclusively that the General Assembly had before it, considered, and rejected the proposition that existing liens should be preserved.

The judgment is affirmed.

Roll, C. J., concurs.

## Concurring Opinion.

Roll, J.—The majority opinion cites the case of *Bolivar Twp. Bd. of Fin. of Benton Co.* v. *Hawkins* (1934), 207 Ind. 171, 189, 191 N. E. 158, 165, 96 A. L. R. 271, 282, as authority for the general proposition that a civil township is a political subdivision of the State, and a creature of the Legislature and acts as the agent of the State. The same principal was again announced in substance in the case of *State ex rel. Jackson, Attorney General* v. *Middleton* (1939), 215 Ind. 219, 19 N. E. (2d) 470, 20 N. E. (2d) 509, and again in *Kassabaum, Admr.* v. *Bd. of Fin., Town of Lakeville* (1939), 215 Ind. 491, 20 N. E. (2d) 642.

At the time the Boliver Township case, *supra,* was decided I entertained serious doubts of the correctness of that opinion. After further study and consideration my doubts grew to a firm conviction that the decision in that case was wrong and in the Jackson case I expressed my views in a dissenting opinion. Since the majority of the court has expressed itself approving the doctrine laid down in the Bolivar Township case I reluctantly yield to the majority view and for this reason I concur in the majority opinion.

Note.—Reported in 44 N. E. (2d) 494.