**D. C. TRANSIT SYSTEM, Inc., Plaintiff,**

v.

**Guy W. PEARSON, Collector of Taxes, et al., Defendants.**

**Civ. A. No. 4709.**

United States District Court
District of Columbia.

March 5, 1957.

---

———◇———

Harvey M. Spear and Richard L. Ottinger, New York City, for plaintiff.

Chester H. Gray, Corp. Counsel, Milton D. Korman and Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This case presents the question whether the plaintiff, D. C. Transit System, Inc., which succeeded Capital Transit Company as the owner and operator of streetcar and bus lines in Washington, D. C. and its environs on August 15, 1956, is liable to the District of Columbia for the 2% tax on gross receipts received by Capital Transit Company during the year ending June 30, 1956, the plaintiff having assumed all of the liabilities of its predecessor, but the tax having been repealed as of August 15, 1956. The tax authorities of the District of Columbia formally levied this tax, one half of which was due in September, 1956, and the second half in March, 1957. On failure to receive payment of the first half, the tax officials served on the plaintiff a formal notice of delinquency.

The plaintiff, claiming that it was not indebted for this tax, brought this action to enjoin the Collector of Taxes and the Tax Assessor of the District of Columbia from distraining on the plaintiff's property to enforce payment, and moves for a preliminary injunction. The defendants move to dismiss the complaint. Since their motion is accompanied by documents *dehors* the pleadings, it will be treated as a motion for summary judgment, as prescribed by Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C. The plaintiff also moves for summary judgment. The matter is now before the Court on these three motions.

■■ A preliminary question arises whether this action may be maintained. It is contended by counsel for the District of Columbia that the collection of taxes may not be impeded by injunction, but that if the plaintiff desires to contest liability, its exclusive remedy is to pay the tax and then sue for a refund. The basis for this position is D.C.Code, Section 47–2410, which provides that, "No suit shall be filed to enjoin the assessment or collection by the District of Columbia or any of its officers, agents, or employees of any tax". Similar enactments are found in United States Code. Title 26, § 7421 directs that, "* * * no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court". U.S.Code, Title 28, § 1341 provides that, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." In spite of the broad, sweeping language of these statutes, it had been uniformly held that they are but a restatement of the principle that equity will not interfere by injunction with the collection of taxes unless some special or extraordinary circumstance is present, justifying its interposition.

In Miller v. Standard Nut Margarine Co., 284 U.S. 498, 509, 52 S.Ct. 260, 263,

76 L.Ed. 517, this doctrine was summarized as follows:

"And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector."

This rule has been generally recognized and applied by the Federal courts.[1]

Numerous exceptions to the comprehensive ban against injunctions to restrain the collection of taxes have been developed by judicial decisions. As a result these statutes may be said to be more honored in the breach than in the observance. Upon a showing of considerations that appeal to the discretion of a court of equity, a suit for an injunction may be entertained and a determination of the validity of the tax made in such summary and expeditious manner. One of the many exceptions to the prohibition comprizes cases in which it is sought to collect the tax from a person other than the original taxpayer, as for instance, a transferee of the taxpayer's property, or a person who has assumed his liability.[2] This case is within this exception. Accordingly, the Court is of the opinion that this action may be maintained and will proceed to a determination of the merits, namely, first, whether Capital Transit Company was liable for the tax in question; and, second, if so, whether this liability has been assumed by the plaintiff.

The District of Columbia has for many years imposed a gross receipts tax on specified public utilities and banks. Later this tax was extended to companies operating street railroads and buses. During the period here involved such utilities were taxed at the rate of 2% per annum. The pertinent statutory provisions are found in D. C.Code, § 47–1701:

"Each national bank * * * and all other incorporated banks and trust companies in the District of Columbia, * * * and all gas, electric lighting, and telephone companies, * * * shall make affidavit to the board of personal-tax appraisers on or before the 1st day of August each year as to the amount of its or their gross earnings or gross receipts, as the case may be, for the preceding year ending the 30th day of June, and each national bank and all other incorporated banks and trust companies respectively shall pay to the collector of taxes of the District of Columbia per annum 6 percent on such gross earnings and each gas company, electric-lighting company, and telephone company shall pay to the collector of taxes of the District of Columbia per annum 4 per centum on such gross receipts, from the sale of public utility commodities and services within the District of Columbia * * *. Each company operating a street railroad or both a street railroad and bus services in the District of Columbia shall pay 2 per centum per annum on their gross receipts: * * *".

The law requires payment of personal taxes of all kinds to be made in equal semi-annual installments in September and March of the following fiscal year, D.C.Code § 47–1209. This enactment

---

1. Hopkins v. Southern Cal. Tel. Co., 275 U.S. 393, 48 S.Ct. 180, 72 L.Ed. 329; Hillsborough v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358; Allen v. Regents, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448; Adler v. Nicholas, 10 Cir., 166 F.2d 674; Glenn v. America Surety Co., 6 Cir., 160 F.2d 977, 981; Shelton v. Gill, 4 Cir., 202 F.2d 503; National Foundry Co. of N. Y. v. Director of Int. Rev., 2 Cir., 229 F.2d 149; City of Dallas v. Higginbotham-Bailey-Logan Co., 5 Cir., 37 F.2d 513–514.

2. Adler v. Nicholas, 10 Cir., 166 F.2d 674; Glenn v. American Surety Co., 6 Cir., 160 F.2d 977, 981; Shelton v. Gill, 4 Cir., 202 F.2d 503.

has been applied to taxes on gross receipts.

As required by statute, Capital Transit Company filed a return with the Board of Personal Tax Appraisers for the District of Columbia, on July 11, 1956, reporting taxable gross receipts for the year ending June 30, 1956, amounting to $21,128,108.13. On this basis the Board assessed a tax of $422,-562.16. A bill for the first half of this tax, amounting to $211,281.08, due in September, 1956, and another bill for the second half in the same amount due in March, 1957, were sent to Capital Transit Company. No payment having been received, the Collector of Taxes dispatched a letter to the plaintiff notifying it that the first half of the tax assessed against Capital Transit Company for the period July 1, 1955 to June 30, 1956 was delinquent and unpaid, and that the addressee was liable for this indebtedness. The letter demanded payment within ten days, stating that otherwise the Collector might distrain and enforce collection by seizure and sale of goods, chattels, or effects. This suit followed.

 We now reach the first of the two major questions to be decided, namely, whether Capital Transit Company owed this tax. The Company had been operating streetcar and bus lines in Washington for a number of years under a Congressional franchise. Controversies that need not be recounted, culminated in the Act of Congress of August 14, 1955, 69 Stat. 724, which repealed and revoked the charter and the franchise of the Capital Transit Company as of a date one year subsequently, that is as of midnight August 14, 1956.[3] A series of negotiations ensued and eventuated in an agreement between Capital Transit Company and the T.C.A. Investing Corporation, dated July 7, 1956, whereby the latter undertook to organize a subsidiary corporation, and the former agreed to convey to the new company all of its assets in consideration of certain cash payments and an undertaking to assume all liabilities of Capital Transit Company. T.C.A. Investing Corporation then brought about the creation of the D. C. Transit System, Inc., the plaintiff in this action. The Act of July 24, 1956, Public Law 757, 84th Congress, 2d Session, 70 Stat. 598, granted to the plaintiff a franchise to operate a mass transportation system for passengers for hire within the District of Columbia and between the District of Columbia and the Washington Metropolitan Area. Section 8 of this Act repealed, as of August 15, 1956, the gross receipts tax on companies operating street railroads and buses in the District of Columbia. Specifically, Section 8(a) of the Act provided, in part, as follows:

"Sec. 8(a) As of August 15, 1956, paragraph numbered 5 of section 6 of the Act entitled 'An Act making appropriations to provide for the expenses of the Government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred and three, and for other purposes', approved July 1, 1902, as amended (D.C.Code, sec. 47–1701), is amended by striking out the third and fourth sentences * * *."

The sentences stricken from the law by this amendment contain the provision imposing a tax on gross receipts of street railroad and bus companies. Whether Capital Transit Company owed the tax involved in this case depends in large part upon the application of the

---

**3.** Joint Resolution of January 14, 1933, 47 Stat. 752, 761, which granted a franchise to Capital Transit Company reserved in Section 13 the right to repeal the resolution and provided that "any and all rights of franchise created by this resolution shall terminate one year following its repeal." The Act of August 14, 1955 amended the Joint Resolution of January 14, 1933 by adding Section 14 thereto, reading as follows: "The charter and all rights of franchise of the Capital Transit Company created by this resolution are hereby repealed in accordance with the terms of section 13 hereof".

provision repealing the tax "as of August 15, 1956".

There is considerable discussion in the authorities concerning the question whether a tax on the gross receipts of a corporation engaged in a public calling is actually a tax on its gross receipts or a tax on its franchise measured by its gross receipts, and, if it is the latter, whether the tax is levied on the privilege of operating the franchise during the year in which the gross receipts are earned, or during the following year and the gross receipts of the preceding year are merely the measure of the .tax. These distinctions, however, have no bearing or importance as concerns the issues of this case. The authorities dealing with this problem generally relate to the imposition of such a tax by a State on an interstate public utility. In this event the distinction may become significant as bearing upon the constitutional power of the State to levy the tax, namely, whether it constitutes an undue burden on interstate commerce. These problems, however, do not arise in connection with a tax statute of local application in the District of Columbia. The Congress has plenary power to legislate for the District. This authority includes the power to tax. It is derived from Article I, Section 8, Clause 17, of the Constitution, which confers power to exercise exclusive legislation over such district as may become the seat of government. By virtue of this authority, for example, the Congress imposes a tax on real and personal property within the District of Columbia, something that it may not do elsewhere because of the constitutional limitations on the power of the Congress to levy direct taxes. Thus, the Congress has dual power to levy taxes within the District of Columbia: one source of power in Article I, Section 8, Clause 17 of the Constitution; the other is the general grant of power to tax found in Article I, Section 8, Clause 1. Consequently, it is immaterial for the purposes of the instant case whether the tax is considered to be franchise tax measured by gross receipts or a tax directly on gross receipts. The case can be considered untrammeled by such questions.

In brief the statute requires certain corporations to file in July of each year a return of their gross receipts for the preceding year and to pay a tax on these earnings. From the text of the statute the conclusion seems inescapable that the tax is imposed for the year in which the gross receipts are received,[4] just as the income tax is levied for the year in which the income is earned and not for the year in which the tax is later paid. Counsel for the District of Columbia urge that the liability for the tax attaches as the gross earnings are received. It is the view of this Court that this contention is well founded. Counsel for the District of Columbia also persuasively point out that if the tax were to be construed as imposed for the year in which it is paid, rather than for the preceding year in which the gross receipts are earned, any new bank or new public utility subject to the tax would be free from it for the first year of its operations. No such unexpressed intention can reasonably be ascribed to the Congress.

The cases of District of Columbia v. Glass, 27 App.D.C. 576, and American Security & Trust Co. v. District of Columbia, 29 App.D.C. 265, cited by plaintiff's counsel do not seem applicable. Each of them involved statutory amendments changing the rate of taxes, in one instance increasing and in the other decreasing it. The Court held that the new rate applied to taxes that had accrued but that were payable in the future. This construction of the statutes was based on their peculiar background and phraseology.

It is significant to observe that Capital Transit Company has formally admitted that the tax accrued during the year in which the earnings were received. In a document entitled, "Fi-

---

4. Columbia National Bank v. District of Columbia, 89 App.D.C. 224, 195 F.2d 942.

nancial and Statistical Statements for use of Directors", dated May, 1956, a copy of which was attached to the agreement between Capital Transit Company and T.C.A. Investing Corporation, the gross receipts tax for the fiscal year ending June 30, 1956, is eumerated as a current liability. Page 5 of this document is a consolidated balance sheet listing assets and liabilities. Under the heading "Current Liabilities" is an item "Income Taxes" and another item "Other taxes". Turning to the next page (page 5–A) which contains an itemization of various liabilities, under the heading "Other taxes" is an item "Gross receipts tax—D.C." In two right hand columns are set forth the amounts of this tax for 1956 and for 1955. It should be emphasized that this item is not set forth as a contingent or future liability, but as a current liability. In other words, it was obviously the position of Capital Transit Company that this tax had accrued and that the liability for it had attached, and not that it was a tax that would be thereafter imposed for the following year.

This Court, therefore, concludes that the liability for the gross receipts tax attached and accrued during the fiscal year ending June 30, 1956, even though payment was not due until later. One might as well argue that a promissory note due at a future date is not a liability until the date of payment arrives.

We must next consider the effect of Section 8(a) of the Act of July 24, 1956, repealing the tax "as of August 15, 1956". It is a well established and well recognized principle of statutory construction that in case of any ambiguity or doubt, a statute will be given a prospective rather than a retroactive effect.[5] It is not necessary, however, to rely solely on this doctrine, for the matter is governed by an express statutory provision. U.S.Code, Title 1, Section 109 provides, in part, as follows:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

This provision is applicable to tax laws. Thus in Hertz v. Woodman, 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001, it was held that an Act of Congress repealing an inheritance tax did not abrogate the liability for such tax in a case in which the death of the testator occurred prior to the date of repeal, but the tax was not due until a later time.[6] Consequently, a repeal of a tax which had accrued prior to the effective date of the repeal, but is not due and payable until later, does not affect liability for its payment.

In the light of the considerations that have been discussed, this Court reaches the conclusion that the liability of Capital Transit Company to pay the tax on gross receipts earned during the year ending June 30, 1956, has not been abrogated and still subsists.

 The next and final question is whether this liability has been assumed by the plaintiff. This query is capable only of an affirmative answer. As has been stated above, by the agreement of July 7, 1956, between Capital Transit Company and T.C.A. Investing Corporation, the new company to be formed was to make certain cash payments to Capital Transit Company, and "to assume and discharge as the same mature all the liabilities of Capital

---

5. Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457; United States v. Magnolia Petroleum Co., 276 U.S. 160, 162, 48 S.Ct. 236, 72 L.Ed. 509; Cox v. Hart, 260 U.S. 427, 434, 43 S.Ct. 154, 67 L.Ed. 332; Reynolds v. McArthur, 2 Pet. 417, 7 L.Ed. 470 (Marshall, C. J.).

6. See also Ewbank v. United States, 7 Cir., 50 F.2d 409.

Transit Company * * * of every kind and nature whatsoever whether set forth in the attached balance sheet or not" (paragraph 4(B) (3)). As has been shown the tax item here involved was listed in the attached balance sheet.

The Act of July 24, 1956, which granted a franchise to the plaintiff provided in Section 14:

"The Corporation, at the time it acquires the assets of Capital Transit Company, shall become subject to, and responsible for, all liabilities of Capital Transit Company of whatever kind or nature known or unknown, in existence at the time of such acquisition, and shall submit to suit therefor as though it had been originally liable, and the creditors of Capital Transit Company shall have as to the Corporation all rights and remedies which they would otherwise have had as to Capital Transit Company: * * * In any and all such actions or proceedings, the Corporation shall have, and be entitled to assert, any and all defenses of every kind and nature which are or would be available to Capital Transit Company or which Capital Transit Company would be entitled to assert."

It is hardly necessary to do more than recall the fundamental principle established in Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629, that a franchise is a contract between the grantor and the grantee.

It seems reasonable to think that this tax must have been considered in the negotiations between the representatives of the old and new companies, for it is the largest single item listed in the schedule of current liabilities of Capital Transit Company. It is not at all unlikely that the amount of the cash payment that the new company agreed to make to Capital Transit Company was influenced by the existence and size of this tax liability that the new company was undertaking to assume. No doubt this matter must have entered in-

to the negotiations. Consequently, it cannot be successfully urged that to exact this payment would constitute an unexpected and unanticipated burden on the plaintiff.

It follows, hence, that the tax indebtedness discussed in this opinion still subsists and that the plaintiff is liable for it.

Motion of defendants to dismiss the complaint, treated as a motion for summary judgment, is granted.

Motions of plaintiff for summary judgment and for a preliminary injunction, are denied.