The ESTATE of William Everett HINDS, Deceased, an obligated relative, being the Father of Robert F. Hinds, patient at Madison State Hospital, Appellant-Defendant,

v.

STATE of Indiana, on the Relation of the undersigned MENTAL HEALTH COMMISSIONER, Appellee-Plaintiff.

No. 1–1078A289.

Court of Appeals of Indiana,
First District.

May 24, 1979.

Charles W. Cooper, Cooper, Cox, Jacobs & Kemper, Madison, for appellant-defendant.

Theo. L. Sendak, Atty. Gen., David Michael Wallman, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

LYBROOK, Judge.

The Estate of William Everett Hinds, defendant-appellant, appeals from a judgment of the Jefferson Circuit Court which ordered the Estate to pay to the State of Indiana $17,178.96 for the maintenance of Robert F. Hinds, son of the decedent, a resident patient at Madison State Hospital.

The Estate's appeal raises three issues for our review:

1) Whether the judgment is contrary to law;
2) Whether the judgment is contrary to the evidence; and
3) Whether the award of recovery to the State is excessive.

We remand with instructions to reduce the award of recovery in keeping with the following opinion.

William E. Hinds (Decedent) was an employee of Madison State Hospital from 1920 until he retired in October, 1971. On May 5, 1949, Robert F. Hinds (Son) entered the hospital at the age of 31. Son resided there until his discharge on December 12, 1973, subsequent to his father's death on August 22, 1973.

Decedent died domiciled in Jefferson County where a Petition for Probate of Will and Issuance of Letters was filed. A claim against the Estate was filed by the State of Indiana, on the Relation of the Undersigned Mental Health Commissioner, for the maintenance of Son at the hospital from March 5, 1951, until August 18, 1969. The claim sought $17,178.96. Following a hearing, the court entered judgment for the State for the entire amount of the claim.

## Issue I.

Appellant argues that the trial court's judgment is contrary to law because: 1) the judgment is based on a decision of the Court of Appeals which contravenes an earlier, controlling decision of the Indiana Supreme Court; and 2) the State of Indiana,

on the Relation of the Mental Health Commissioner, failed to follow the proper statutory notice procedures to enforce its claim against the Estate.

By statute, each patient in a state psychiatric hospital and the responsible relatives of the patient, individually or collectively, are liable for the payment of the cost of treatment and maintenance of such patient. Ind.Code 16–14–18–2.

Prior to August 18, 1969, a "responsible relative" was defined in Ind.Code 16–14–18–1(5) as:

" . . . the husband or wife, or the parent of any patient in any psychiatric hospital, and shall include the adult child of any such patient, which adult child is legally responsible for the care and maintenance of such patient."

Effective August 18, 1969, Ind.Code 16–14 ·18 ·1(5) was amended as follows:

"A 'responsible relative' means, and includes the parents of patients, husband or wife of the patient and a legal guardian of the patient in his representative capacity but shall not mean the children of patients or the parents of patients over the age of eighteen (18) years of age who have been in a psychiatric hospital for a continuous period of twelve (12) months or longer."

The State recognized the effect of this amendment in not billing the Estate for Son's confinement at the hospital after August 18, 1969. A further amendment in 1971 is irrelevant here.

■ In *State ex rel. Mental Health Commissioner v. Estate of Lotts,* (1975) Ind. App., 332 N.E.2d 234, this court addressed appellant's contention that the amendment should be given retroactive effect thereby extinguishing any prior existing liability of Decedent under the former responsible relative statute. Basing our opinion on the express language of the amendment, the Repealer Statute Ind.Code 1–1–5–1, and the ordinary rules of statutory construction, we held that the amendment should not be given retroactive effect so as to extinguish any existing liability of a parent of an adult

child under the former responsible relative statute.

Appellant argues that the decision in *Lotts* cannot control in the case at bar because it contravenes an earlier decision of the Supreme Court, *County Department of Welfare v. Potthoff,* (1942) 220 Ind. 574, 44 N.E.2d 494. We see no conflict between *Lotts* and *Potthoff.*

In *Potthoff,* the County Department of Public Welfare of Allen County accepted an agreement with an old age assistance applicant pursuant to the Welfare Act of 1936, whereby, in return for old age assistance payments, the applicant agreed, among other things, that any such assistance together with interest would become a lien against him and his real property and a preferred claim against his estate. Under the agreement, the applicant received $308 before his death on January 2, 1941, and the Welfare Department filed a claim against his estate for that amount with interest.

In 1941, the legislature repealed all the provisions of the Welfare Act of 1936 which related to a lien for old age assistance, the agreement of an applicant to reimburse the State, the transfer of property to the county department, and recovery of assistance paid from the recipient or his estate.

The court addressed the question of whether the change in legislative policy brought about by the enactment of the act of 1941 was retroactive and operated to discharge the liabilities then existing. Three alternatives were discussed: 1) all existing lien contracts were undisturbed by the act of 1941 leaving the State entitled to recover subsequent as well as prior payments; 2) existing liens were preserved so as to entitle the State to recover assistance paid prior to the adoption of the act of 1941, but not afterwards; and 3) all outstanding reimbursement contract liens were completely canceled by the act of 1941, as effectively as though they had never been created.

The court rejected the first alternative as creating an unconstitutional arbitrary classification, and chose between the latter two alternatives on the basis of the intent of the legislature which passed the amendatory language. The court reviewed the legislative history of the act of 1941 and determined that the legislature intended the amendment to have the third possible effect, that all outstanding reimbursement contract liens were completely canceled.

This court in *Lotts, supra,* correctly followed the example set by the Supreme Court in *Potthoff* by searching for and giving effect to the intent of the legislature which passed the 1969 responsible relative statute. The trial court in the case at bar correctly followed the decision in *Lotts* by finding that any existing liability of Decedent prior to August 18, 1969, survived the amendment to the statute.

Just what was the "existing liability of Decedent prior to August 18, 1969" is the crux of appellant's second argument. Appellant argues that the State of Indiana and/or the Department of Mental Health never had a contractual or vested right against Decedent prior to the 1969 amendment to Ind.Code 16–14–18–1 because the State and/or the Department failed to pursue a claim prior to the amendment, or because the State and/or the Department failed to properly notify Decedent as a responsible relative. Appellant contends that Ind.Code 16–14–18–2 and 16–14–18–8 require that, in order for a lien to be enforced against the estate of a responsible relative, the lien must be recorded in the office of the county recorder of the county in which the real property of the relative is located pursuant to the requirements of Ind.Code 16–14–18–2.5. The failure of the State and/or the Department to perfect a lien pursuant to these statutory enactments, the Estate argues, results in a waiver of any lien.

These statutes read as follows:

Ind.Code 16–14–18–2:

"(a) Each patient in a psychiatric hospital of this state, and the responsible relatives of the patient, individually or collectively, are liable for the payment of the cost of treatment and maintenance of such patient.

(b) On or before the fifteenth day of each month, the commissioner shall compute the cost of treatment and maintenance for each patient for the preceding month.

(c) As used in this section, the term 'cost of treatment and maintenance' shall mean the cost of providing the prescribed treatment and maintenance of each patient; and shall include the expenses of personal services, reasonable depreciation on buildings and equipment, and all other operating expenses: Provided, That the cost of treatment and maintenance shall not include the cost of new construction or remodeling, or the purchase of equipment, or the cost of education or educational opportunities.

(d) If any patient of a psychiatric hospital has insurance coverage which covers hospitalization or medical services in psychiatric hospitals, all benefits thereunder, in an amount not in excess of the cost of treatment and maintenance of such patient, shall be assigned to the department.

(e) Outpatient day or night care services when provided by a psychiatric hospital shall have assessed a charge for these services not in excess of actual cost of the service or services, and charges shall be in accordance with a fee schedule as provided in this chapter, and established by each hospital.

(f) The liability created by subsection (a) of this Section for the costs of treatment and maintenance of a patient shall constitute a lien upon the real property of the patient and responsible relatives of the patient whenever said lien has been recorded according to the provisions of this chapter, and such lien shall have priority over all liens subsequently acquired."

Ind.Code 16–14–18–2.5:

"Whenever charges for the cost of treatment and maintenance of a patient shall remain unpaid in whole or in part for a period of 6 months, the Commissioner of the department may cause to be filed, in the office of the County Recorder of the County in which the real property is located, a notice of lien designating the name and place of residence of the patient or responsible relative against whose property the lien is asserted, the date when such charges become delinquent for more than 6 months, and a legal description of the real property subject to the lien. One copy of the notice of lien shall be retained by and filed in the offices of the department, and one copy shall be furnished to the patient or responsible relative whose real property is affected.

From the date on which such notice of lien is recorded in the office of the County Recorder, it shall be and constitutes due notice of a lien against the patient or responsible relative or his estate for any amounts then recoverable and any amounts which shall become recoverable under this chapter, and shall give a specific lien in favor of the department. The lien shall continue from the date of filing until such lien is satisfied or released."

Ind.Code 16–14–18–8:

"(a) The attorney general, upon notification by the commissioner, shall bring suit in the name of the State of Indiana on relation of the commissioner of mental health against the estate of any person failing to make payments as required in this chapter, and the clerk of each Circuit Court for each county of the state shall give notice to the commissioner of mental health of the opening or commencement of any decedent's estate in said county; and if judgment is obtained, such judgment shall constitute a lien against such part of the estate of such person as may be described in the complaint.

(b) The attorney general is further authorized to bring suit against the responsible relatives or legal guardian of any patient for failure to comply with the maintenance agreement established, or for failure to make such agreement. Suit may be brought for the amount due the state for the maintenance charges of the patient. The court may order the pay-

ment of sums due for maintenance charges for such period or periods of time as the circumstances require. Such order may be entered against any or all of such defendants and may be based upon the proportionate ability of each defendant to contribute to the payment of sums representing maintenance charges. Orders for the payment of money may be enforced by attachment as in contempt proceedings against the persons of the defendants, and in addition as other judgments at law, and costs may be adjudged against the defendants and apportioned among them.

(c) The Attorney General is further authorized to bring proceedings in foreclosure on such lien as may arise under IC 1971, 16–14–18–2 during the lifetime of the patient or responsible relative, when in the opinion of the Commissioner of the Department it is in the best interest of the department to foreclose on such lien.

(d) Upon the death of a patient or responsible relative whose property is encumbered by a lien arising under IC 1971, 16–14–18–2 and upon notification by the Commissioner, a claim shall be filed in his estate by the Attorney General for recovery of all charges for treatment and maintenance which have accrued at the date of death. Notwithstanding the provisions of any other law to the contrary, any claim filed for recovery of charges for treatment and maintenance shall have priority in order of payment from the estate over all other claims except prior recorded encumbrances, taxes, reasonable costs of administration, and reasonable funeral expenses. Provided, That if real property of the deceased patient or responsible relative is occupied by a surviving spouse of the patient or responsible relative, the department shall not assert its lien or claim during the life time of said surviving spouse, provided further, however, when other claimants or persons have opened an estate and are attempting to enforce their claims, or in cases of a fraudulent attempt to avoid the claim or lien, the Department shall then file and assert the claim for recovery of costs of treatment and maintenance."

■ Although we agree with the appellant that Ind.Code 16-14-18-2(f), 16-14-18-2.5, and 16–14–18–8(c) and (d) allow the State on relation of the commissioner of mental health to perfect and foreclose a lien against the real property of a responsible relative, we cannot agree with appellant's implicit contention that the perfection and foreclosure of such a lien is the State's only avenue of recourse. Ind.Code 16–14–18–8(a) and (b) provide other alternatives, subsection (a) being the alternative chosen here, "a suit in the name of the State on relation of the commissioner of mental health against the estate of any person failing to make payments as requested by this chapter."

■ At this point, however, we must acknowledge that there is merit in the issue of notice raised by the Estate. In *State ex rel. Murray v. Estate of Riggens,* (1975) 164 Ind.App. 314, 328 N.E.2d 248, this court considered an appeal by the State from the denial of its claim against the Estate of Merle R. Riggens seeking recovery of an alleged indebtedness of the Estate for the maintenance of the son of the decedent in Beatty Memorial Hospital.

The following relevant facts were stipulated: 1) Riggens' adult son was committed to the state hospital, apparently with no notice of the commitment to the father; 2) the cost of the son's maintenance at the hospital was $9,626.62, all incurred prior to the 1969 amendment to the responsible relative statute; 3) during the period of his son's confinement, the father was financially unable to provide support for anyone other than himself; and 4) no notice was provided to the father of his alleged responsibility during his lifetime.

The court's analysis focused on the following statutory language:

Ind.Code 16-14-18-3:

"The billing and collection of the maintenance expense as provided for in section 2 [16–14–18–2] *shall be made* by the division or any unit thereof. . . ." (Emphasis by the *Riggens* court.)

Ind.Code 16-14-18-5:

"The division may agree to accept payment at a lesser rate than that prescribed

by this article. *The division, in determining whether or not to accept the lesser amount, shall take into consideration the amount of money which may be necessary to maintain or support any member of the family of the patient.* All agreements to accept a lesser amount shall be subject to cancelation or modification at any time by the division. *Any person who has been issued a statement of sums due as maintenance charges may petition the division for a release from or modification of such statement,* and the division shall provide for hearings to be held on any such petition. . . . " (Emphasis by the *Riggens* court.)

Ind.Code 16–14–18–6:

"The division is authorized to investigate, either with its own staff or on a contractual or other basis, the financial condition of each person liable under this act, and is further authorized to make determinations of the ability of the patient, the estate of the patient, the legal guardian of the patient, and/or each of the responsible relatives to pay maintenance charges. The division is further authorized to set a standard as a basis of judgment of ability to pay, which standard shall be recomputed periodically to reflect changes in the cost of living and other pertinent factors, and to make provisions for unusual and exceptional circumstances in the application of such standard.

The division may issue to any of the persons liable under this act, statements of sums due as maintenance charges, requiring them to pay monthly, quarterly, or otherwise as may be arranged, an amount not exceeding the maximum cost as determined under this act."

Judge Hoffman said, in *Riggens,* 328 N.E.2d at 251:

"Upon a reading of these portions of such statutes it is an inescapable conclusion that our Legislature intended the Department of Mental Health to have the power to issue to responsible relatives statements of amounts due it, and that the Department was intended to issue

such statements. See: IC 1971, 16–14–18–6, *supra,* and IC 1971, 16–14–18–3, *supra.* Further, it is apparent that under this statutory scheme one must be billed by the Department in order to petition it to reduce or forgive the amounts due. And, once a responsible relative of the patient has so petitioned, the statutes require that the Department must consider the support needs of such responsible relative. This is because only members of the patient's family can be considered as responsible relatives under the statutes applicable to the case at bar. See: IC 1971, 16–14–18–5, *supra,* and IC 1971, 16–14–18–1 (Burns Code Ed.).

An examination of the statutory scheme now under consideration thus reveals a legislative intent that the Department must attempt to give timely notice to individuals of its determination to consider them liable for the costs of treatment of a patient by issuing a statement for such costs. This statutory scheme further evidences a legislative intent that such an individual must be afforded an opportunity as nearly contemporaneous as possible with any incurrence of liability to contest such determination or to show his inability to pay such costs.

In the case at bar, it is undisputed that Merle Riggens never was issued a statement for the costs of treatment of his son. Even assuming *arguendo* that Merle Riggens could properly have been held liable for such costs, he had no notice that the Department would ever seek payment from him, no opportunity to contest the determination to consider him liable, and no opportunity to show his inability to pay such costs.

Furthermore, it is stipulated that if Merle Riggens had been billed, by reason of his personal support needs he would have been able to show an inability to pay any part of the costs of treatment of his son. Because the Department is bound under the statutes to consider the support needs of a family member of the patient in agreeing to lower or forgive amounts due it, Merle Riggens could have obtained a total forgiveness of amounts

due so long as his inability to pay continued.

Inasmuch as the State has failed to follow the statutorily prescribed procedures and has contravened legislative intent in attempting to collect treatment costs from Merle Riggens as it did, no liability accrued to Riggens during his life. *Cf.: Stayner v. Nye* (1949), 227 Ind. 231, 85 N.E.2d 496. It necessarily follows that there can be no just claim against Riggens' estate for such costs."

Thus, the trial court's judgment is correct so far as it determined the Estate to be liable to the State for those maintenance charges of which Decedent had timely notice of the State's determination to consider him liable for such costs.

### Issue II.

Appellant's second allegation of error logically becomes our next focus of attention: whether the judgment is supported by the evidence. To prove that timely notice was given Decedent, the State must show, under *Riggens, supra,* that "statements of amounts due" were issued to Decedent so that he was "afforded an opportunity as nearly contemporaneous as possible with any incurrence of liability to contest such determination or to show his inability to pay such costs."

The record shows the following evidence on the issue of notice. Jerry Thaden, assistant superintendent of Madison State Hospital, sent a letter to Decedent notifying him that:

"We are going to have to begin billing you for the account of your son and this is quite a sizeable amount. We are enclosing adjustment forms for you to complete since you have not paid on the account. It is entirely possible that you may be unable to pay and can be granted official waiver of the charge, but your cooperation is necessary. We will not be able to help you if you do not ask for this assistance."

■ The letter, a copy of which was admitted into evidence, was dated "October 21, ＿＿6", the first three numerals of the year obliterated by a perforation. Vernay Reindollar, personnel director at the hospital, testified without contradiction that Thaden was not employed at the hospital in 1956, and that Thaden became assistant superintendent, the title typed beneath his signature on the letter to Decedent, in 1960. Mrs. Margaret Hamilton, supervisor of patient accounts, was asked if she could testify from personal knowledge whether Decedent was billed on a regular basis. She testified, "Yes I can, from a period on which [Thaden's] letter indicated." Thus, the State proved that Decedent had notice of the State's determination to consider him liable for the costs of Son's maintenance as of October 21, 1966. The State also proved that Decedent, as of that date, could have petitioned for the monthly charges to be reduced or forgiven and that Decedent was informed that the burden was on him to seek such relief.

The record also includes a copy of a maintenance agreement between Decedent and the Commissioner of the Department of Mental Health whereby Decedent agreed to pay, and the Department agreed to accept, $75 per month for the maintenance of Son in lieu of the legally prescribed maximum charge of $7.50 per day. This agreement bore an effective date of July 1, 1969.

Thus, under *Riggens, supra,* the State proved Decedent's liability for the legally prescribed maximum charge from October 21, 1966, until July 1, 1969, and his liability for $75 per month from July 1, 1969, until August 18, 1969, the effective date of the new responsible relative statute.

We next consider whether the State carried its burden of proving the required notice to Decedent of the State's determination to consider him liable for the costs of Son's maintenance from March 5, 1951, the date from which the State dates Decedent's liability, to October 21, 1966, the date of Thaden's letter to Decedent.

At the hearing, Mrs. Hamilton had with her a ledger sheet for Son's account for the years 1951 to 1969. She testified that the sheet showed no billings having been made

and that she possessed no copies of any such billings. She testified:

"We were typing out all statements according to our ledger cards where there was not a waiver and I would assume that we would have typed this one out because this one did not have a waiver."

When asked if Decedent was aware of his obligation under the old responsible relative statute, Mrs. Hamilton said:

"I had him in my office and explained it to him. It goes back a long way. We were always conscious in our office that he was an employee and had an obligation. We knew he drew a decent salary and that's what bothered us, when we learned the charge would be submitted to him in a lump sum. That is why the many consultations."

When asked from what time Decedent was aware of his obligation, she answered:

"April 28th [1953] is when I started [working at the hospital]. When I first started with the hospital I was working with the trust fund and the coffee shop accounts and other duties in the business office. Possibly two years later I began working in the maintenance area for billing patients. . I would just simply say that it was very early there. I would assume [Thaden's] letter could be '56."

Reindollar was asked whether he had talked to Decedent concerning Son and Son's account. He answered:

"I had occasion to talk to him concerning his son. I don't recall specific times or specific information that I talked with him about his son's account. He has discussed with me many times his financial problems and obligations and his general financial income."

Finally, Mrs. Hamilton testified that Decedent was billed on a regular basis "from a period on which [Thaden's] letter indicated".

From all this testimony, Mrs. Hamilton's reference to billing of "a lump sum", and the statement in Thaden's letter that "We are going to have to begin billing you . . . ", one logically infers that statements of amounts due were not issued to Decedent prior to October 21, 1966.

The State failed to prove by sufficient evidence that Decedent received the notice required by *Riggens, supra,* to establish the liability of his Estate for Son's maintenance costs prior to October 21, 1966.

### Issue III.

This failure of proof of Decedent's liability for Son's maintenance costs prior to October 21, 1966, mandates our agreement with appellant's contention that the trial court's award of recovery to the State was excessive. We remand this cause to the trial court for a reduction in the award of recovery and for entry of final judgment pursuant to this opinion.[1]

Remanded with instructions.

LOWDERMILK, P. J., and ROBERTSON, J., concur.

---

1. The record shows that some payments on Son's account were made between Decedent's retirement from his hospital employment and his death. These must, of course, be deducted from the amount the Estate must pay the State for Son's maintenance from October 21, 1966, to August 18, 1969.