**KENNY KENT CHEVROLET CO., INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, and Kenneth L. Miller, Individually as Commissioner, Respondents.**

No. 82T10–9303–TA–00015.

Tax Court of Indiana.

Jan. 25, 1994.

Paul J. Wallace, Bowers, Harrison, Kent & Miller, Evansville, for petitioner.

Pamela Carter, Atty. Gen. of Indiana, David A. Arthur, Deputy Atty. Gen., Indianapolis, for respondents.

FISHER, Judge.

The Petitioner, Kenny Kent Chevrolet Co., Inc. (Kent), appeals a final determination of the Respondent, the Indiana Department of State Revenue (the Department), requiring Kent to pay intangibles tax for 1985 and 1986 (years in issue).

## ISSUES

I. Whether the Department has the authority to assess and collect the intangibles tax for the years in issue notwithstanding the subsequent repeal of the tax.

II. If the Department does have that authority, whether it should calculate Kent's intangibles tax liability at the rate applicable to permit stamp holders.

### FACTS AND PROCEDURAL POSTURE

Kent is an Indiana corporation in the business of selling and servicing new and used automobiles. Its principal office is located in Evansville, Indiana. Kent often assists its customers in financing the purchase of vehicles by providing installment sales contracts which it sells or assigns to various financing agencies or financial institutions.

For the years in issue, installment sales contracts were regarded as intangibles under IND.CODE 6–5.1–1–1 (repealed). Kent acquired a permit stamp to endorse its intangibles pursuant to IND.CODE 6–5.1–4–3 (repealed). Permit stamp holders were allowed

to pay intangibles tax liabilities at a lower rate than nonpermit holders. *See* IND. CODE 6–5.1–2–2 (repealed); IND.CODE 6–5.1–4–1 (repealed); IND.CODE 6–5.1–4–5 (repealed). On September 17, 1985, the Department revoked Kent's stamp permit, claiming Kent had failed to report quarterly to the Department all intangibles it executed after April 1, 1985, as required by IC 6–5.1–4–4 (repealed) and IC 6–5.1–4–5 (repealed).

On November 10, 1988, the Marion Superior Court declared the Indiana intangibles tax unconstitutional. That decision was later reversed by the Indiana Supreme Court. *Indiana Dep't of State Revenue v. Felix* (1991), Ind., 571 N.E.2d 287, *cert. dismissed, Felix v. Indiana Dep't of State Revenue* (1992), —— U.S. ——, 112 S.Ct. 1073, 117 L.Ed.2d 278. In 1989, however, the legislature repealed the intangibles tax retroactive to November 10, 1988. Pub.L. 80–1989, §§ 18–19. The legislature also removed the intangibles tax from the tax administration act's definition of "listed taxes" in IND. CODE 6–8.1–1–1.

On November 29, 1988, the Department issued to Kent notices of intangibles tax due for the period April 1, 1985, to December 31, 1986. Kent timely filed with the Department a letter protesting the assessment. On October 21, 1992, the Department denied Kent's protest. Kent now appeals. Additional facts will be supplied as necessary.

### DISCUSSION AND DECISION
### STANDARD OF REVIEW

■ The court reviews appeals from the Department *de novo*. *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 986 (citing IND.CODE 6–8.1–9–1(d); *Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, 869, *aff'd* (1991), Ind., 572 N.E.2d 481, *cert. denied* (1991), —— U.S. ——, 112 S.Ct. 337, 116 L.Ed.2d 277). Therefore, the court is bound by neither the issues nor the evidence at the administrative level. *Id.*

### I

■ When the legislature repealed the intangibles tax effective November 10, 1988, it did two things. First, it repealed the statute that imposed the tax, IND.CODE 6–5.1–2–1. Next, it repealed all related provisions regarding the assessment, payment, and administration of the intangibles tax. More specifically, it repealed the intangibles tax as a "listed tax" in IC 6–8.1–1–1. "The provisions of ... [article 8.1] apply for the purposes of imposing, collecting, and administering the listed taxes." IND.CODE 6–8.1–1–6. Consequently, Kent argues that because there is neither an intangibles tax statute nor an administrative statute left for the Department to administer and enforce, there is no intangibles tax liability.

In response, the Department cites the "repeal-gap" statute, IND.CODE 1–1–5–1:

the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide; and such statute shall be treated as still remaining in force for the purposes of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

The Department maintains that this statute has the effect of continuing both Kent's liability for intangibles tax incurred prior to the 1988 repeal as well as the Department's authority to enforce that liability.

Kent relies on *County Dep't of Public Welfare of Allen County et al. v. Potthoff* (1942), 220 Ind. 574, 44 N.E.2d 494, for the proposition that when a statute was repealed "it was considered, except as to transactions passed and closed, as if it had never existed." *Id.* at 584, 44 N.E.2d at 497. Thus, Kent argues, IC 1–1–5–1 was intended to continue only those actions to enforce liability under the repealed statute that were instituted prior to the effective date of repeal. Because no proceeding was pending to collect taxes and the tax had not been assessed as of November 10, 1988, the effective date of the repeal, Kent maintains it incurred no intangibles tax liability.

Under IND.CODE 6–5.1–4–2(d) (repealed), Kent was a qualified credit company, and therefore elected to pay its intangibles tax at a lower rate than normally applicable.

*See* IC 6–5.1–4–1 (repealed); IC 6–5.1–4–5 (repealed). In order to maintain that status, Kent was to follow certain reporting requirements:

> For reporting and payment purposes, the department shall assign each person electing under this chapter [as a qualified credit company], either:
>
> > (1) twelve (12) reporting periods, each covering one (1) calendar month, or
> >
> > (2) four (4) quarterly reporting periods, each covering three (3) months.
>
> Quarterly reporting periods must begin on January 1, April 1, July 1, and October 1.
>
> Within fifteen (15) days of the close of each of his reporting periods, a person electing under this chapter shall file a verified report with the department *and shall pay the accrued intangibles tax shown on that report.*

IC 6–5.1–4–4 (repealed) (emphasis added). Among other things, each verified report was to include:

> (c) the accrued intangibles tax, which is the total of the monthly taxes for the months covered by the report.

IND.CODE 6–5.1–4–5 (repealed).

Kent, assigned to the quarterly reporting schedule, was therefore required to file a verified report and pay its intangibles tax within fifteen days of the close of each calendar quarter. The conclusion that Kent incurred a new intangibles tax liability each quarter in which a sales contract was entered into is unavoidable. As a result, Kent's liability to *report and pay* intangibles tax attached each quarter. The intangibles tax was imposed on those persons who exercised the privileges set out in IND.CODE 6–5.1–2–1 (repealed). Kent exercised the privileges of executing and assigning intangibles. *Id.* Kent is therefore liable for the tax, as liability arises with exercise. *See Indiana State Dep't of Revenue v. Valley Financial Services, Inc.* (1982), Ind.App., 435 N.E.2d 68, 73.

*See also Meridian Mortgage Co., Inc. v. State* (1979), 182 Ind.App. 328, 395 N.E.2d 433, 438.

Furthermore, the intangibles tax was a "self-assessing" tax. Assessment was not dependent on a county official valuing property, as it is in property tax. *See* IND.CODE 6–1.1. In fact, the Department played no role in calculating intangibles tax liability. Rather, a taxpayer calculated its own liability for the intangibles tax, and then reported and paid that liability to the Department at the end of each quarter. *See* IC 6–5.1–4–5 (repealed). The Department merely supplied the forms on which those calculations were to be made. *See id.* Kent's argument that IC 1–1–5–1 is not applicable in this case because it would "operate to preserve a yet to be determined liability for a proceeding not yet begun for taxes not yet assessed,"[1] must fail. To assert that the liability "was yet to be determined" flies in the face of the plain, ordinary and usual meaning of the words in IC 6–5.1–4–4 and IC 6–5.1–4–5, which state that intangibles tax liability is incurred, determined, and due 15 days after the end of each quarter. *See* IC 6–5.1–4–4 (repealed); IC 6–5.1–4–5 (repealed).[2]

The court holds that Kent's liability to pay intangibles tax for the quarters from April 1, 1985, to December 31, 1986, accrued and attached every quarter, and that the liability was not extinguished by the repeal of the intangibles tax and its enforcement provisions.

## II

The other issue to be resolved is whether Kent's intangibles tax is to be calculated pursuant to the permit stamp method. The court answers that question in the negative.

■ Those taxpayers who paid the intangibles tax pursuant to the annual rate method were subject to the applicable rates set forth in IC 6–5.1–2–2 (repealed). Those tax-

---

1. *Petitioner's Brief* (filed September 30, 1993) at 3.

2. 1 U.S.C. § 109, identical in all relevant portions to Indiana's "repeal-gap" statute, IC 1–1–5–1, is applicable to tax laws. *D.C. Transit System, Inc. v. Pearson,* 149 F.Supp. 18, 23 (D.D.C.

1957). "Consequently, a repeal of a tax which had accrued prior to the effective date of the repeal, but is not due and payable until later, does not affect liability for its payment." *Id.* *See also Hertz v. Woodman* (1910), 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001.

payers who paid the intangibles tax pursuant to the permit stamp method were to calculate their liability according to IC 6–5.1–4–5 (repealed). Under IC 6–5.1–4–3 (repealed), if the Department determined a person met the requirements for qualified credit company status, it was required to "issue to that person a numbered permit and an identically numbered rubber stamp to be used for endorsing intangibles ..." By that same statute, what the Department giveth, it can taketh away. More specifically, the Department "may revoke a permit and rubber stamp if a person fails to comply with the [reporting and filing] requirements of this chapter." *Id.*

On September 17, 1985, the Department revoked Kent's permit stamp effective April 1, 1985, because Kent had not filed a report since the close of the first 1985 quarter. Kent contends the Department had no authority to revoke a permit stamp retroactively. This contention has no bearing in this case, however, because the Department did not revoke Kent's stamp retroactively.

Kent failed to file its report and pay its taxes for the quarter beginning April 1, 1985, and ending June 30, 1985. Under IC 6–5.1–4–4 (repealed), Kent had within fifteen days of the close of the reporting period to file its report. The Department was therefore unable to ascertain any earlier than mid-July that Kent failed to fulfill its reporting and filing requirements for the April–June quarter. A retroactive revocation would have occurred only had the Department revoked Kent's stamp for a quarter in which Kent had properly reported and paid its intangibles tax liability. Accordingly, the Department was within its authority under IC 6–5.1–4–3 to revoke the permit stamp for the period in which Kent failed to meet all necessary reporting requirements.

Kent also asserts that because IC 6–5.1–4–3 (repealed) did not provide an application deadline for a permit stamp, nor did it provide for annual renewal, it was at all times qualified under the repealed statute as a permit stamp holder. As a result, all intangibles tax liability was to be calculated pursuant to the permit stamp method.

Because "[t]he Department has the primary responsibility for the administration, collection, and enforcement of the listed taxes" under IND.CODE 6–8.1–3–1, it has the power both to issue and revoke stamp permits for payment of intangibles tax. "When construing a statute, the court is to give statutory words and phrases their plain, ordinary, and usual meaning ..." *Fort Wayne Nat'l Corp. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 621 N.E.2d 668, 671 (citing *State v. Hartman* (1992), Ind., 602 N.E.2d 1011, 1013; *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580–81, *aff'd* (1992), Ind., 585 N.E.2d 1336). To revoke a permit stamp means "to annul [that stamp] by recalling or taking [it] back." *Webster's Third New International Dictionary* 1994 (1981). In other words, all status as a permit holder is gone. It then follows that in order for the holder to be reissued a stamp, the holder must reapply for a new stamp. Although Kent did apply for a new stamp in 1988, it cannot have the benefit of that stamp retroactively applied to the years in issue. Accordingly, Kent's intangibles tax liability for the years in issue is to be calculated by the annual rate method instead of the permit stamp method.

### CONCLUSION

The court finds the Department was well within its authority to assess, collect and enforce Kent's Indiana intangibles tax liabilities incurred in 1985 and 1986, after the intangibles tax was repealed, effective 1988. Furthermore, the liabilities Kent incurred are calculated by the annual rate method and not the permit stamp method.