## BOARD OF COMMISSIONERS OF TIPPECANOE COUNTY *v.* LUCAS, TREASURER.

1. If by any direction of a Supreme Court of a State an entire cause is determined, the decision, when reduced to form and entered in the records of the court, constitutes a final judgment, whatever may be its technical designation, and is subject in a proper case to review by this court. *So held,* where, upon appeal from an interlocutory order made by a circuit court of Indiana, granting a temporary injunction, the Supreme Court of the State reversed the order and remanded the cause to the lower court, with directions to dismiss the complaint.

2. Unless restrained by provisions of its constitution, the legislature of a State

possesses the power to direct a restitution to tax-payers of a county, or other municipal corporation, of property exacted from them by taxation, into whatever form the property may be changed, so long as it remains in possession of the municipality. The exercise of this power infringes upon no provision of the Federal Constitution.

ERROR to the Supreme Court of the State of Indiana.

By an act of the legislature of Indiana, passed on the twelfth day of May, 1869, counties and townships in that State were authorized to aid in the construction of railroads, by taking stock in railroad companies, and making donations to them. Before giving the aid, it was necessary for the officers of the county, the board of commissioners, to consult the electors of the county upon the subject, and obtain their approval of the proceeding at an election called for that purpose. Such approval having been obtained from the electors of Tippecanoe county, the board of commissioners of the county, during the years 1871, 1872, and 1873, subscribed and paid for stock in the Lafayette, Muncie, and Bloomington Railroad Company, a corporation organized under the laws of the State, and engaged at the time in building a railroad passing through the county. The stock thus subscribed and paid for amounted to six thousand six hundred and ten shares, of the par value of fifty dollars a share; and for them the company issued its certificates to the commissioners. The money with which the stock was paid was collected by a special tax levied for that purpose. The act provided for collecting the money before the subscription could be made.

Afterwards, on the 17th of December, 1872, the legislature passed an act " to require railroad companies to issue stock, paid for by taxes voted in aid of the construction of their railroads, to the tax-payers or their assigns, and to issue unclaimed stock for the benefit of the common-school fund." This act provided, that, in all cases where stock had been taken by counties and paid for from taxes levied and collected under the act of May, 1869, it should be the duty of the treasurer of the proper county, upon request prior to Jan. 1, 1874, to issue to the several tax-payers living, and to the personal representatives of such as may have died, a certificate, stating the amount of tax paid by them respectively, the date of payment, and the

name of the company in aid of which the tax was paid, as the fact should appear from the proper tax duplicates and record in his office.

The certificates thus issued were made assignable, and any lawful holder could present and surrender them to the proper company previous to Jan. 1, 1874, in sums equal in amount to any number of shares, and it was made the duty of the company to issue a certificate of paid-up capital stock to the amount of the certificate of taxes paid which was surrendered. For the stock unclaimed within the time designated a certificate was to issue to different townships in the county, for the benefit of the common-school fund. The act declared that the issuing of the stock to individuals or townships, as thus provided, should operate to cancel *pro tanto* the stock held by the county under the provisions of the act of May, 1869.

The present complaint was filed by the commissioners of the county in the Tippecanoe Civil Circuit Court, to restrain the treasurer of the county from issuing to tax-payers the certificates of taxes paid, as provided by the act of 1872. The treasurer had previously, against the remonstrance of the commissioners, issued a number of certificates to different parties, and declared his intention to issue certificates to all parties applying who were entitled to receive them under the act. In the complaint, the commissioners denied the power of the State to take the stock, or any part of it, from them, and give it to individuals for their private benefit; and alleged, that by the issuing of the certificates their right was made questionable, a cloud was cast upon their title, and the market value of the stock held by them was destroyed, and that they were deprived of their rights as stockholders in the company. They, therefore, prayed that a temporary injunction be granted against the treasurer, and that it might be made perpetual on the hearing.

The complaint was verified; and, after notice and argument of counsel, an order was made granting a temporary injunction, as prayed. On appeal to the Supreme Court of the State, the order, or the judgment, as it is termed in the language of the record, was reversed, and the cause remanded to the lower court, with instructions to dismiss the complaint. From this judgment the cause is brought to this court on a writ of error.

*Mr. Z. Baird*, for the plaintiff in error.

Under the Indiana Code of Procedure, the judgment of the Supreme Court, reversing that of the inferior court, and remanding the cause with instructions to dismiss the complaint, determined the merits of the controversy. It was, therefore, a final judgment within the meaning of the act of Congress. *Whiting* v. *The Bank of the United States*, 13 Pet. 15; *Forgay et al.* v. *Conrad et al.*, 6 How. 202; *French* v. *Shoemaker*, 12 Wall. 86; *Atherton et al.* v. *Fowler et al.*, 91 U. S. 143.

The plaintiff in error is a municipal corporation, exercising delegated powers, legislative, executive, and judicial. 1 Gavin & Hord, 247 *et seq.* It lawfully acquired the stock in controversy, and became the owner thereof in its corporate name, and cannot be deprived of it in the manner prescribed by the act of Dec. 17, 1872.

Where corporate powers are conferred, there is an implied contract between the State and the corporators that the property held under their charter shall not, without their consent, be taken and appropriated to other uses. *Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518; Cooley on Const. Lim. 235; Dillon on Mun. Corp. 8; *Armstrong et al.* v. *The Board of Commissioners of Dearborn County*, 4 Blackf. 208; *Edwards* v. *Jaggers et al.*, 19 Ind. 406; *Terrett* v. *Taylor*, 9 Cranch, 43.

Under the constitution of Indiana, and the peculiar powers conferred by law upon the board of county commissioners, the latter, as to certain of such powers, — including that to acquire railroad stock, — is a private corporation. In levying the tax to create a fund with which to take the stock, it exercised power as a public corporation; but in making the subscription and acquiring the stock, for its advantage and emolument, it acted as a private corporation. It certainly does not hold the stock for public purposes in the sense that the power of the legislature over it is without limit, but, on the contrary, as a trustee for the benefit of the whole people of the country in their aggregate capacity. Its title is as valid as if the stock had been purchased with the funds collected for general purposes, if such funds could be lawfully applied thereto, or as if it had been acquired by gift, bequest, or in any other legitimate mode. The act in question attempts to divest that title, and vest

it in individuals.    It is, therefore, clearly beyond the scope of
the legislative power.    *Town of Milwaukee* v. *City of Milwaukee*,
12 Wis. 93 ; *State of Wisconsin, ex rel., &c.*, v. *The County
Court*, 34 id. 546 ; *Trustees of Dartmouth College* v. *Woodward,
supra ; Terrett* v. *Taylor, supra ; State of Wisconsin, ex rel.,
&c.*, v. *Haben, Treasurer, &c.*, 22 Wis. 660 ; *Bailey* v. *The
Mayor, &c.*, 3 Hill, 531 ; *Atkins* v. *Town of Randolph*, 31 Vt.
266.

Powers granted exclusively for public purposes are vested in
the corporation in its public, political, or municipal character ;
but if the grant is for the purpose of private advantage and
emolument, though the public may derive a common benefit
therefrom, the corporation, *quoad hoc*, stands on the same foot-
ing as any individual or body of persons upon whom the like
special franchises have been conferred.    *Trustees of Dartmouth
College* v. *Woodward, supra ; Philips* v. *Berry*, 1 Ld. Raym. 8 ;
s. c. 2 T. R. 352 ; *Allen* v. *McKean*, 1 Sumn. 297 ; *The People*
v. *Morris*, 13 Wend. 331 ; 2 Kent, Com. 275 (4th ed.) ; *United
States Bank* v. *Planters' Bank*, 9 Wheat. 907 ; *Clark* v. *Corpo-
ration of Washington*, 12 id. 40 ; *Moodalay* v. *East India Co.*,
1 Bro. Ch. 469.

As the act of Dec. 17, 1872, invades the right of private
property and impairs the obligations of a contract, it is in vio-
lation of the Constitution of the United States, and void.

*Mr. H. W. Chase* and *Mr. J. R. Coffroth* for the defendant
in error.

1. The judgment of the Supreme Court of Indiana is not
final.    The order of the Circuit Court awarding an injunction
was merely interlocutory, passed at a preliminary state of
the proceedings, and not upon the final hearing of the case, and
the action of the Supreme Court was had upon that order.

2. A county, being a political organization for public purposes,
is under the complete control of the State.    Within the ex-
pressed constitutional restrictions, it or its property may be dealt
with by the legislature as it deems wise and expedient, provided
that the property be secured for the uses of those for whom and
at whose expense it was originally purchased.    *Darlington* v.
*Mayor, &c.*, 31 N. Y. 164 ; *Lycoming* v. *Union*, 15 Penn. St.
166 ; *Grim* v. *Weissenbery*, 57 id. 433 ; *Philadelphia* v. *Fox*,

64 id. 169; *County* v. *County*, 12 Ill. 1; *Dennis* v. *Maynard*, 15 id. 477; *Love* v. *Schenck*, 12 Ired. 304: *Louisville, &c. Railroad Co.* v. *County Court, &c.*, 1 Sneed, 637; *Sharp* v. *Contra Costa Co.*, 34 Cal. 288; *State* v. *St. Louis Co.*, 34 Mo. 546; *City of Augusta* v. *North*, 57 Me. 392; *Wade* v. *Richmond*, 18 Gratt. 583; *State* v. *Votaw*, 8 Blackf. 2; *Sloan* v. *State*, id. 364; *State Bank* v. *Madison*, 3 Ind. 43; *Goodrich* v. *Winchester*, 26 id. 119; *Maryland* v. *Baltimore & Ohio Railroad Co.*, 3 How. 534; *East Hartford* v. *Hartford Bridge Co.*, 10 id. 511; *Mulligan* v. *Corbins*, 7 Wall. 487.

3. The stock in question was purchased by a fund raised for that specific purpose by the exercise of the taxing power. Dividing it among the tax-payers, in proportion to the amount by them severally contributed, conflicts with no constitutional provision. The board had but a naked legal title. The individual tax-payers were alone beneficially interested. The road having been completed, all participation in the management of the company was wisely withdrawn from the county board, which was organized solely for the administration of the affairs of the county.

MR. JUSTICE FIELD, after making the foregoing statement of the case, delivered the opinion of the court.

It is objected, *in limine*, that this court has no jurisdiction of the cause, on the alleged ground that the judgment rendered is not a final judgment. The order of the Circuit Court, granting a preliminary injunction, was, it is true, interlocutory, and, if the judgment of the Supreme Court of the State had been limited to a simple reversal, the objection would have been tenable. The cause would then have remained in the Circuit Court for further proceedings. But the direction to that court, accompanying the reversal of its order to dismiss the complaint, made a final disposition of the cause. With the entry of that judgment the cause was at an end. With the peculiarities of the practice of the Indiana courts we have nothing to do. If, upon an appeal from an interlocutory order, a final disposition of the merits of a cause can be made in that State, it is no concern of ours. If, by any direction, the entire cause is, in fact, determined, the decision, when reduced to form and entered

in the records of the court, constitutes a final judgment, subject in a proper case to our review, whatever may be its technical designation. The course adopted in this case was evidently pursued, from the fact that the whole merits of the controversy had been considered on the motion for the preliminary injunction. The application was founded upon the alleged invalidity of the act of 1872; no other matter was discussed, and all objections of form in the proceeding were waived, that the validity of the act might be considered and determined. Being determined against the view advanced by the plaintiffs, the cause, so far as the State courts were concerned, was practically at an end.

In this court, also, the validity of the act of 1872 is the sole question presented. The act is assailed here, as in the court below, as authorizing an invasion of the right of private property, and as impairing the obligation of an executed contract. Were the transaction one between the State and a private individual, the invalidity of the act would not be a matter of serious doubt. Private property cannot be taken from individuals by the State, except for public purposes, and then only upon compensation, or by way of taxation; and any enactments to that end would be regarded as an illegitimate and unwarranted exercise of legislative power. And any attempt by the legislature to take private property from its grantee, and restore it to its grantor, would be in conflict with the constitutional inhibition against impairing the obligation of contracts.

But between the State and municipal corporations, such as cities, counties, and towns, the relation is different from that between the State and the individual. Municipal corporations are mere instrumentalities of the State, for the convenient administration of government; and their powers may be qualified, enlarged, or withdrawn, at the pleasure of the legislature. Their tenure of property, derived from the State for specific public purposes, or obtained for such purposes through means which the State alone can authorize, — that is, taxation, — is so far subject to the control of the legislature, that the property may be applied to other public uses of the municipality than those originally designated. This follows from the nature of such bodies, and the dependent character of their existence.

But property, derived by them from other sources, is often held, by the terms of its grant, for special uses, from which it cannot be diverted by the legislature. In such cases, the property is protected by all the guards against legislative interference possessed by individuals and private corporations for their property. And there would seem to be reasons equally cogent, in abstract justice, against a diversion by the legislature from the purposes of a municipality of property raised for its use by taxation from its inhabitants. There are probably provisions in the constitutions of the several States which would prevent any marked diversion in that way; but whether a contract between the State and the municipality, within the protection of the Federal Constitution, is implied in such cases, that the property acquired shall not be diverted from the purposes of the municipality and appropriated to other uses, is a question we are not now called upon to determine. In the present case, it is not necessary for us to go over the ground, so ably explored by the judges of the Supreme Court of Indiana, and attempt to mark the line within which the State may control and dispose of property held by a municipal corporation, and beyond which its action is subject to the same restraints as are its dealings with the property of individuals. It is enough that the present case is free from difficulty. Here there is no attempted diversion of the property from the purpose for which it was acquired: that purpose has been accomplished. The money having been obtained by compulsory contribution from the inhabitants, the legislature could undoubtedly have directed its restitution to them at any time before the subscription was made. If the road had been previously built, and the aid contemplated had thus become unnecessary, such restitution would have been proper and just. Numerous cases might be named where the return of taxes collected would be the only just proceeding to be taken. Money raised for a special emergency may not be required by the emergency ceasing.

The changed condition of the property collected in this case, by its use in paying for the stock subscribed, could not affect the power of the State: it only made the subsequent distribution of the property to the tax-payers a matter of greater difficulty. Nor could the fact, that the commissioners of the county

took the certificate in their name for the stock subscribed, remove the property from the control of the State. The commissioners took the stock, not to hold as an investment which was to yield an annual revenue to the county, but to aid in the construction of a work in which the public were interested, — a railroad through the county. As justly observed by counsel, the management of the affairs of a railroad company is no part of the proper business of a county; and, when the purpose designed by the subscription was accomplished, it was sound policy to relieve the county officers from any participation in such management. Of the power of the State to direct a restitution to tax-payers of a county, or other municipal corporation, of property exacted from them by taxation, into whatever form the property may be changed, so long as it remains in possession of the municipality, we have no doubt. The exercise of the power infringes upon no provision of the Federal Constitution. Further than this, it is not necessary for us to go for the disposition of this case.

 *Judgment affirmed.* 