## ADAMS EXPRESS COMPANY *v.* ADAMS.

---

TRIAL; CARRIERS; LIMITATION OF LIABILITY.

1. The trial court properly refuses to submit a question to the jury when neither party has offered any evidence in respect to it.

2. Where a common carrier attempts to show an abridgment of its common-law liability, the burden of proof is on it; and nothing short of an express stipulation, by parol or in writing, will be permitted to discharge it from duties which the law has annexed to its employment.

3. An express company is liable to the shipper of a lost trunk for its full value, where it appears that the shipper had left the city before the trunk was delivered to the company, a friend having ordered it to be sent for, and that the expressman who called for it, without asking the value of the trunk, filled in the blanks of the receipt, one of the provisions of which, as so filled in, limited the company's liability to $50, and there is nothing to show that the receipt was delivered to an agent of the shipper before the trunk was accepted for shipment.

No. 1673. Submitted February 12, 1907. Decided March 5, 1907.

HEARING on an appeal by the defendant from a judgment on verdict in an action against a carrier to recover damages for loss of a trunk.       *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia.

The suit was brought by Alfred Edgar Adams, administrator of the estate of Effie Darling Adams, to recover damages sustained by reason of the nondelivery of a trunk containing various articles of wearing apparel, which the defendant, the Adams Express Company, a corporation, appellant here, accepted as a common carrier in Washington, District of Columbia, for delivery at Whitinsville, Massachusetts. The plaintiff's intestate and daughter lived at Whitinsville, Massachusetts, and in November, 1902, came to Washington on a visit. While in Washington she stopped at the Baltimore House. A friend, M. Grace Hive, was with her most of the time until her departure for home about January 2, 1903, and assisted her in packing her trunk. Miss Hive testified that the trunk was locked and strapped and that the key was taken by Miss Adams; that she accompanied Miss Adams to the depot; and that the trunk was left at the hotel, in the room Miss Adams had occupied. The witness further testified that on her return from the depot she "went to the office of the Adams Express Company, and told them to send for the trunk," that she had "notified the hotel lady that she (the witness) would call for the trunk or have it sent for; that she thinks the trunk was sent by Mr. Nubel, but does not know; that witness did not send the trunk at all." The plaintiff introduced as a witness one Cleveland Randolph, who testified as follows: "I was driver for the express company, and got the trunk from the hotel. I do not think I asked the value; the receipt is in my handwriting, I put on 'value not given;' no one was there to know who the trunk was shipped from; two ladies showed me the trunk; no one was in the room with the trunk; more than likely I gave the receipt to one of the ladies; I think I delivered the trunk to the company's branch office, 1425 F street." On cross-examination witness said there was no one in the room when he got the trunk, and that he filled in

the blanks in the receipt or bill of lading, which plaintiff produced and offered in evidence.

The defendant introduced but one witness, who testified that plaintiff's counsel had possession of the foregoing receipt or bill of lading prior to the bringing of this suit.

The following appears in the record immediately after the synopsis of the testimony: "No evidence was offered by either party tending to show. that Mr. Nubel had been authorized to attend to the shipping of the trunk, nor that he was the agent of plaintiff's intestate. There was no evidence tending to show that Nubel had delivered the trunk to the defendant."

The plaintiff in his declaration did not declare on the receipt or bill of lading, but brought suit against the defendant for the nondelivery of the trunk, as before stated. This receipt or bill of lading contains the following provision: "In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation not exceeding $50, unless a greater value is declared, the shipper agrees that the value of the said property is not more than $50, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than $50 if no value is stated herein."

The defendant asked the court to instruct the jury that the plaintiff was not entitled to recover exceeding the sum of $50. This request was refused, and exception noted.

The defendant then prayed the court to instruct the jury "that if they believed from the evidence that the plaintiff's intestate authorized one Nubel to attend to shipping her trunk; that Nubel did so and accepted the shipping receipt given in evidence, then Nubel was her agent, and she was bound by the terms and conditions of the shipping receipt or bill of lading; and that the plaintiff was not entitled to recover exceeding the sum of $50." The court refused this request on the ground that there was no evidence tending to show that Nubel was her agent. An exception was noted to this ruling.

The defendant then asked the court to instruct the jury "that if they believed from the evidence that the plaintiff's intestate

authorized one Nubel to deliver her trunk to the defendant for transportation, and that Nubel did so, and accepted the shipping receipt given in evidence, and delivered said receipt to the plaintiff's intestate, and that she retained the same without objection, then she was bound by its terms and conditions, and the plaintiff would not be entitled to recover exceeding $50." This instruction was also refused by the court, and an exception duly noted.

Thereupon the court instructed the jury, in part, as follows:

"It is within the legitimate power of an express company to require in advance from its patrons information concerning the value of the shipment which has been given to the company for transportation, in order that the company may have knowledge when matter of special value is intrusted to their care, for the purpose of expending special care upon it. And so, when a patron approaches an express company for the purpose of securing transportation of an article, the company not only has the right to inquire as to the value of the article, but, if the owner declines to make a statement of the value, it has the right to say: 'We will undertake this shipment only on condition that you agree that if this article is lost we shall not be liable exceeding $50.' If that statement is really made by the agent of the company, and the owner hears it and assents, or if he says nothing, that is an agreement, an assent, and the shipper is bound by it. Or if, instead of verbal communication from the agent to the shipper, written mention is made upon the face of the company's receipt and transmitted to the shipper as his receipt, so that before the acceptance of the article by the express company the shipper is in possession of the receipt, and thereby knowing the terms the company is making with him, then the bailment upon the part of the shipper of the shipment, and the having by him of the written receipt, is an agreement by him to reasonable terms in it, and he will be held by law. Now the receipt that has been introduced before you shows on its face that the carrier imposed this restriction limiting the value of the shipment. But there is no evidence to show that the shipper received this receipt, and no evidence that would justify you in finding that any contract, express or implied, was entered into

between the shipper and the company.  So you can eliminate
this point from consideration altogether.  The only question is,
What is the reasonable value of the trunk and contents,—what
was in the trunk and what was the fair and reasonable value of
it ?"

To this instruction a general exception was noted by the de-
fendant.

*Messrs. Williams, Thomas, & Williams* and *Mr. S. T.
Thomas,* for the appellant:

1. The possession of a bill of lading by the shipper is prima
facie evidence of assent to its terms and conditions.  *Cau* v.
*Railroad Company,* 194 U. S. 427; *King* v. *Woodbridge,* 34 Vt.
571; *Boorman* v. *American Exp. Co.* 21 Wis. 154.

2. Acceptance of the carrier's receipt creates a contract be-
tween him and the shipper.  Hutch. Carr. § 241.

3. The delivery of contracts and other instruments may be
presumed from their possession by the promisee.  *Nichols* v.
*Alsop,* 10 Conn. 268; *Richardson* v. *Noble,* 77 Me. 390; *Jenson*
v. *Chicago, &c., R. R. Co.* 37 Minn. 383; *Wood* v. *Chetwood,*
44 N. J. Eq. 64; *McNair* v. *Dodge,* 7 Mo. 404; *Scaif* v. *Bird,*
39 Ark. 568; *Saratoga Co.* v. *Leach,* 37 Hun, 336; *State* v.
*Ingram,* 5 Ind. 441; *Spence* v. *Rutledge,* 11 Ala. 590; *Fire-
men's Ins. Co.* v. *McMillan,* 29 Ala. 147; *Glenn* v. *Grover,* 3
Md. 212; *Bostwick* v. *Van Voorhiss,* 91 N. Y. 353; *Strough* v.
*Wilder,* 119 N. Y. 530; *Kranchfelt* v. *Slattery,* 33 N. Y. Supp.
27; *Flour City Nat. Bank* v. *Grover,* 34 N. Y. Supp. 497;
*Taylor* v. *Gay,* 6 Blackf. 150; *Holliday* v. *Lewis,* 14 Hun, 478;
*Saratoga Bank* v. *Leach,* 37 Hun, 478.

4. The appellee's act in producing the shipping receipt is an
implied admission that it was delivered to his intestate.  Greenl.
Ev. 16th ed. §§ 199, 204–208; *Gaither* v. *Farmer's Bank,* 1
Pet. 37; *Philadelphia R. R.* v. *Howard,* 13 How. 307; *Parish*
v. *United States,* 8 Wall. 489; *Williams* v. *Congor,* 125 U. S.
397; *Sturm* v. *Boker,* 150 U. S. 812; *Morgan* v. *R. R.* 96
U. S. 720; Bigelow, Estoppel, 5th ed. pp. 684–693.

*Mr. S. V. Hayden, Mr. A. B. Webb,* and *Mr. Herbert L. Franc* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The first and second assignments of error may be considered together, as they relate to the refusal of the court to submit to the jury the question whether Nubel shipped the trunk, and, if so, whether he was the authorized agent of Miss Adams. The only testimony in the record, in which Mr. Nubel is even mentioned, is the testimony of M. Grace Hive that she *thought* the trunk was sent by Mr. Nubel, *but did not know.* Who Mr. Nubel was, and what his relationship to the parties was, does not even appear. It does appear, as previously stated, that *"no evidence* was offered by either party tending to show that Mr. Nubel had been authorized to attend to the shipping of the trunk, nor that he had shipped it, nor that he was the agent of plaintiff's intestate." It also appears that "there was no evidence tending to show that Nubel had delivered the trunk to the defendant." In view of these concessions, it is difficult for us to perceive upon what theory the defendant framed these two instructions to the jury. It is the jury's function to pass upon the weight of evidence introduced, and not to speculate upon evidence that might have been introduced. Certainly a court would be derelict in its duty should it submit a question to the jury in a case in which neither party had offered any evidence in respect to such question. The action of the court in refusing to submit these questions to the jury was clearly correct.

The third and last assignment of error involves a misapprehension of the ruling of the court. It states that the court erred "in charging that there was no evidence that the plaintiff's intestate received said shipping receipt, and that the only question for the jury was the reasonable value of the trunk and its contents." The court's charge, taken as a whole, merely advised the jury that it would have been competent for the defendant to have limited its common-law liability by notifying the plaintiff or her agent of its intention so to do *"before the acceptance of*

*the article"* by the defendant. This statement of the law by the
court was unquestionably correct. The court then instructed the
jury that there was no evidence that this receipt or bill of lading
was received by the shipper, that is, brought to her attention
before the trunk had been accepted by the company, and that
therefore she was not bound by its terms. In this the court was
also correct. It is unnecessary to devote any time to a dis-
cussion of the question whether common carriers may, within
certain limits, abridge their common-law liability, for that ques-
tion has long since been settled. It is also well settled that "the
burden of proof lies on the carrier, and nothing short of an
express stipulation, by parol or in writing, should be permitted
to discharge him from duties which the law has annexed to his
employment. The exemption from these duties should not de-
pend upon implication or inference, founded on doubtful and
conflicting evidence, but should be specific and certain, leaving
no room for controversy between the parties." *New Jersey
Steam Nav. Co.* v. *Merchants' Bank,* 6 How. 383, 12 L. ed.
482. In the case of *Cau* v. *Texas & P. R. Co.* 194 U. S. 431,
48 L. ed 1056, 24 Sup. Ct. Rep. 663, Mr. Justice McKenna,
speaking for the court, said : "Primarily the carrier's responsi-
bility is that expressed in the common law, and the shipper may
insist upon the responsibility. But he may consent to a limita-
tion of it, and this is the 'option and opportunity' which is
offered to him. What other can be necessary ? There can be
no limitation of liability without the assent of the shipper. (*New
Jersey Steam Nav. Co.* v. *Merchants' Bank,* 6 How. 344, 12
L. ed. 465), and there can be no stipulation for any exemption
by a carrier which is not just and reasonable in the eye of the
law (*New York C. R. Co.* v. *Lockwood,* 17 Wall. 357, 21 L. ed.
627; *Bank of Kentucky* v. *Adams Exp. Co.* 93 U. S. 174, 23
L. ed. 872)."

In the instant case Miss Adams had left Washington before
her trunk was shipped. Her friend went to the office of the
express company, and requested them to send for the trunk.
There is no evidence that any inquiry was made of her con-
cerning the value of the contents of the trunk, and the testimony

of the witness Randolph, who went for the trunk, negatives such a conclusion, for he states that he filled in the blanks in the receipt or bill of lading when he went for the trunk; that he did not ask the value; that "more than likely he gave the receipt to one of the ladies" at the hotel; and that immediately thereafter he delivered the trunk to the company's branch office on F street. It conclusively appears, therefore, that Miss Adams could not have known anything about this attempt of the company, through its agent Randolph, to limit its common-law liability for the safe delivery of her trunk and its contents, until a time subsequent to the receipt and loss of the trunk by the company. Under this evidence it is impossible to say that the shipper assented to a limitation of the carrier's liability, and the action of the learned judge below, in so charging the jury, was correct.

In the case of *Graves* v. *Adams Exp. Co.* 176 Mass. 280, 57 N. E. 462, relied upon by appellant, the evidence showed that the shipper was familiar with shipping receipts, and accepted the receipt limiting the company's liability without protest. The court said: "A common carrier may limit its liability in case of loss by stipulations concerning the value of the property it undertakes to convey. * * * *The only qualification is that the stipulation shall be brought home to the knowledge of the shipper under such circumstances that his assent to it can fairly be assumed to have been given.*"

We have carefully examined the other cases cited by appellant, and have failed to find one in which any other doctrine is announced.

Finding no error in the record, the judgment will be affirmed, with costs, and it is so ordered.                    *Affirmed.*