


FILED

Feb 18 2025, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

City of Bloomington,

*Appellant-Plaintiff*

v.

Catherine Smith,

*Appellee-Defendant*

and

State of Indiana,

*Appellee-Intervenor*

---

February 18, 2025

Court of Appeals Case No.
24A-PL-1775

Appeal from the Monroe Circuit Court

The Honorable Nathan G. Nikirk, Special Judge

Trial Court Cause Nos.
53C06-2203-PL-610
53C06-2203-PL-611

---

**Opinion by Judge Tavitas**
Judges May and DeBoer concur.

**Tavitas, Judge.**

# Case Summary[1]

The City of Bloomington ("Bloomington") has historically provided sewage services to landowners adjacent to the city. In exchange, as allowed by statute, Bloomington obtained many landowners' agreements to waive their rights to remonstrate against future annexation by the city. In 2017, Bloomington began efforts to annex several surrounding territories, but before these efforts were finalized, the General Assembly passed legislation ("the 2017 Act") precluding the annexations. Our Supreme Court found the 2017 Act to be unconstitutional special legislation in *Holcomb v. City of Bloomington*, 158 N.E.3d 1250 (Ind. 2020). Before *Holcomb* was handed down, however, the General Assembly passed new legislation ("the 2019 Act"), which invalidated many of Bloomington's remonstration waivers. This had the effect of frustrating and

---

[1] We held oral argument in this case on December 17, 2024, at the Court of Appeals Courtroom. We thank counsel for their excellent advocacy.

outright defeating several of Bloomington's renewed annexation efforts after the *Holcomb* decision.

[2] Bloomington sued Catherine Smith, the Monroe County Auditor ("the Auditor"), and argued, in part, that the 2019 Act unconstitutionally impaired Bloomington's contracts with the landowners in violation of the Contract Clauses of the United States and Indiana Constitutions. The State intervened to defend the 2019 Act and moved for partial summary judgment. The trial court ruled in favor of the State. Bloomington appeals and argues that the trial court erred by granting partial summary judgment in favor of the State.

[3] We first conclude that Bloomington's constitutional arguments are not barred by claim preclusion, as the State contends. We next conclude that, as a municipality of the State and under the circumstances presented here, Bloomington lacks enforceable rights against the State under the Contract Clauses of the United States and Indiana Constitutions. Lastly, we conclude that, even if such rights existed, the 2019 Act does not substantially impair Bloomington's contracts. Accordingly, we affirm the trial court's ruling.

## Issues

[4] The parties raise several issues, which we restate as:

    I.    Whether Bloomington's arguments are barred by the doctrine of claim preclusion.

II. Whether Bloomington, as a municipality of the State, can challenge the 2019 Act under the Contract Clause of the United States Constitution, U.S. Const. Art. 1, § 10.

III. Whether Bloomington, as a municipality of the State, can challenge the 2019 Act under the Contract Clause of the Indiana Constitution, Ind. Const. Art. 1, § 24.

IV. Assuming Bloomington can challenge the 2019 Act, whether the 2019 Act substantially impairs Bloomington's contracts.

## Facts

[5]  Bloomington has a longstanding practice of permitting landowners adjacent to the city to contract with the city for access to municipal sewer services. Landowners seeking access to these services must pay service and installation fees. Additionally, many contracts required the landowner to sign a waiver of the right to remonstrate against future annexation of the land by the city. The remonstration waivers did not specify when such annexation would occur.

[6]  The authority for municipalities to include remonstration waivers regarding contracts for the extension of sewer services has been provided by statute since at least 1967.[2] According to Bloomington, acquiring remonstration waivers was

_____

[2] Indiana Code Section 36-9-22-2 provides, in relevant part,

(b) The works board of a municipality may contract with owners of real property for the construction of sewage works within the municipality or within four (4) miles outside its

a central component of its city planning and, throughout the city's history, has facilitated numerous annexations of adjacent properties. Bloomington has acquired hundreds of these waivers. Over eighty percent of the waivers are more than fifteen years old, and at least a few date back to 1958. Many waivers were not contemporaneously recorded.

[7] In February 2017, Bloomington proposed annexations of several areas adjacent to the city. Before the annexations were finalized, however, in April 2017, the General Assembly passed House Bill 1001 as Public Law 217-2017 ("the 2017 Act").[3] The 2017 Act essentially "cut off Bloomington's proposed annexation

___

corporate boundaries in order to provide service for the area in which the real property of the owners is located. . . .

(c) **The contract must include, as part of the consideration running to the municipality, the release of the right of**:

**(1) the parties to the contract; and**

**(2) the successors in title of the parties to the contract;**

**to remonstrate against pending or future annexations by the municipality of the area served by the sewage works.** Any person tapping into or connecting to the sewage works contracted for is considered to waive the person's rights to remonstrate against the annexation of the area served by the sewage works.

(Emphasis added.) Similar provisions have existed in the Indiana Code since at least 1967. *See* LAWS OF THE STATE OF INDIANA, Edgar D. Whitcomb 266-67 (1967) (reproducing Ind. Code § 19-2-7-16 (*rep'd*)).

[3] The 2017 Act, which was codified at Indiana Code Section 36-4-3-11.8, provided in relevant part:

(a) This section does not apply to an annexation that meets both of the following requirements:

(1) The annexation is an annexation under section 4(a)(2), 4(a)(3), 4(b), 4(h), 5, or 5.1 of this chapter.

(2) No parcel within the annexation territory is subject to a waiver of remonstrance.

(b) This section does not apply to an annexation and annexation ordinance that is adopted and effective before April 30, 2017.

(c) This section applies to property that meets both of the following requirements:

(1) Is in an unincorporated area on January 1, 2017.

and prohibited Bloomington from trying to annex the same areas for the next five years." *Holcomb*, 158 N.E.3d at 1254. The General Assembly was concerned with "the speed of Bloomington's proposed annexation, despite the opposition of some members of the community," and "Bloomington's consideration of waivers of remonstrance, some of which were old and unrecorded[.]" *Id.* at 1265-66.

[8] Bloomington challenged the 2017 Act as unconstitutional special legislation pursuant to Article 4, Section 23 of the Indiana Constitution, and on December 15, 2020, our Supreme Court handed down its decision in *Holcomb*, 158 N.E.3d 1250. The Court held that the 2017 Act was unconstitutional special legislation because the State's concerns with Bloomington's attempted annexations were not "unique" to Bloomington so as to justify a special law. *Id*. at 1265. A general law would have adequately addressed the General Assembly's concerns, but the Act instead "singled out Bloomington." *Id*. at 1266.

[9] Before our Supreme Court handed down its decision in *Holcomb*, however, our General Assembly passed House Bill 1427 as Public Law 257-2019 ("the 2019 Act"). The 2019 Act amended several sections of the Indiana Code to provide

---

(2) Is within the boundaries of a territory proposed to be annexed in an annexation ordinance that was introduced after December 31, 2016, and before July 1, 2017.

(d) An annexation ordinance that is introduced after December 31, 2016, and before July 1, 2017, that proposes to annex property to which this section applies is void and the annexation action is terminated. A municipality may not take any further action to annex any of the property to which this section applies until after June 30, 2022, including introducing another annexation ordinance covering some or all of the property covered by this section after June 30, 2017, and before July 1, 2022.

that remonstration waivers executed before July 1, 2003, are "void," and remonstration waivers executed between June 30, 2003, and July 1, 2019, are "void" unless the waiver was recorded before January 1, 2020.[4] According to Bloomington, the 2019 Act "retroactively voided remonstrance waiver provisions in 966 of Bloomington's sewer extension contracts, which is more than 80 percent" of Bloomington's contracts with landowners in the annexation territories. Appellant's Br. p. 16.

[10] After our Supreme Court's decision in *Holcomb*, Bloomington reinitiated annexation proceedings. On September 15 and 22, 2021, the Bloomington City Council adopted annexation ordinances for the annexation of seven territories, which the city referred to as Areas 1A, 1B, 1C, 2, 3, 4, and 5. The annexations would add approximately 10,000 acres and 15,000 people to the city.

[11] Bloomington mailed notice of the annexation ordinances to affected landowners, which triggered the remonstration process. As a part of this process, if at least sixty-five percent of the affected landowners in one of the annexation territories signed a remonstration petition, the annexation ordinance for that territory would be void. Ind. Code § 36-4-3-11.3(b)(1). If at least fifty-one percent but less than sixty-five percent of the landowners signed a

---

[4] *See* Ind. Code §§ 13-18-15-2; 36-4-3-11.7; 36-9-22-2; 36-9-25-14.

remonstration petition, the annexation would be subject to judicial review. Ind. Code § 36-4-3-11.3(c).

[12] On February 23, 2022, to determine whether the annexations would proceed, the Auditor calculated the percentage of landowners who signed remonstration petitions in the annexation territories. The Auditor published certified percentages that accounted for remonstration waivers but excluded waivers that were deemed void under the 2019 Act. Under these results, the annexations of Areas 1A and 1B were subject to judicial review, and the annexations of Areas 1C, 2, 3, 4, and 5 were void. According to Bloomington, if the percentages were calculated based on remonstration waivers notwithstanding the 2019 Act, only the annexations of Areas 4 and 5 would be subject to judicial review, and the remaining annexations would be valid. These results are reproduced in the table below:

| Area | Remonstration Percentage Excluding Void Waivers under 2019 Law | Annexation Result | Remonstration Percentage notwithstanding 2019 Law | Annexation Result |
|------|------|------|------|------|
| 1A | 60.94% | Judicial Review | 37.75% | Valid |
| 1B | 57.50% | Judicial Review | 30.91% | Valid |
| 1C | 71.43% | Void | 3.81% | Valid |
| 2 | 71.98% | Void | 34.93% | Valid |

| | | | | |
|---|---|---|---|---|
| 3 | 66.67% | Void | 50.00% | Valid |
| 4 | 70.79% | Void | 59.55% | Judicial Review |
| 5 | 66.67% | Void | 51.85% | Judicial Review |

[13] On March 29, 2022, Bloomington brought seven actions against the Auditor, one for each annexation territory. All seven actions were consolidated. Bloomington argued, in part, that the 2019 Act is unconstitutional because it substantially impairs the city's contracts in violation of the Contract Clauses of the United States Constitution, U.S. CONST. ART. 1, § 10 ("Federal Contract Clause"), and the Indiana Constitution, IND. CONST. ART. 1, § 24 ("Indiana Contract Clause").[5] The State intervened to defend the 2019 Act.

[14] Bloomington and the State filed cross-motions for partial summary judgment.[6] While summary judgment briefing was ongoing, Bloomington moved to

---

[5] The Contract Clause arguments were Counts I and II in Bloomington's complaint. Bloomington also alleged: Count III, that the 2019 Act could not be "applied to Bloomington" because the General Assembly "unconstitutionally delay[ed]" Bloomington's original annexation efforts; and Count IV, that the Auditor erroneously counted "defective" remonstration petitions. Appellant's App. Vol. II p. 14-15.

[6] Neither Bloomington nor the State sought summary judgment on Count IV. The trial court granted summary judgment as to Count III, in addition to Counts I and II, but Bloomington does not appeal that judgment.

voluntarily dismiss with prejudice the cases involving Areas 1A and 1B so that separate remonstration actions with landowners in those areas could proceed. The trial court granted Bloomington's motion and reconsolidated the remaining five cases, which involved Areas 1C and 2-5. The State then filed a reply in support of its motion for summary judgment, arguing that, as a result of Bloomington's dismissal of the cases involving Areas 1A and 1B, the doctrine of claim preclusion barred Bloomington's remaining five actions.

[15] The trial court issued its order on partial summary judgment on June 18, 2024.[7] The trial court ruled that claim preclusion did not apply but rejected Bloomington's contract-clause arguments. The trial court concluded that the Indiana Constitution did not "give the State's political subdivisions a right to object to the validity of statutes releasing obligations due [to] the state or themselves." Appellant's App. Vol. II p. 56 (internal quotation marks omitted). Similarly, the trial court concluded that, under the United States Constitution, "municipalities and political subdivisions cannot bring [federal] constitutional claims against their states, including claims under the [Federal] Contract Clause." *Id*. at 58 (internal quotation marks omitted). Bloomington now appeals.

---

[7] On July 9, 2024, the trial court amended its partial summary judgment order to indicate that, pursuant to Appellate Rule of Procedure 2(H)(2), there was "no just reason for delay" and to direct the "entry of final judgment" as to the claims covered by the summary judgment order. Appellant's App. Vol. II p. 60.

## Discussion and Decision

[16] Bloomington argues that, by retroactively voiding remonstration waivers, the 2019 Act substantially impairs Bloomington's contracts with landowners in violation of the Federal and Indiana Contract Clauses.

[17] The trial court granted partial summary judgment in favor of the State on these arguments. When a summary judgment ruling such as this turns solely on "legal questions such as the proper interpretation and application of statutes and constitutional provisions[,]" it raises questions of law that we review de novo. *Holcomb*, 158 N.E.3d at 1254. We remain mindful, however, that "a statute comes clothed with the presumption of constitutionality until clearly overcome by a contrary showing." *Id.* (internal quotation marks omitted).

[18] We affirm the trial court's grant of partial summary judgment. We first reject the State's argument that the doctrine of claim preclusion bars Bloomington from bringing its constitutional challenges, and we, thus, reach the constitutional issues in this case. We next conclude that, because Bloomington is a municipality of the State, Bloomington lacks enforceable rights to challenge the 2019 Act under the Federal and Indiana Contract Clauses. Lastly, we conclude that, even if Bloomington had enforceable rights under these authorities, the 2019 Act does not unconstitutionally impair Bloomington's contracts. Accordingly, we affirm the trial court's grant of partial summary judgment in favor of the State.

# I. Bloomington's arguments are not barred by the doctrine of claim preclusion.

We first address the State's argument that, because Bloomington voluntarily dismissed with prejudice two of the original seven actions challenging the 2019 Act—the cases involving Areas 1A and 1B—the doctrine of claim preclusion bars Bloomington from challenging the 2019 Act with regard to the remaining five annexation territories. We address this argument before turning to Bloomington's constitutional arguments because "we generally avoid addressing constitutional questions if a case can be resolved on other grounds." *Girl Scouts of So. Ill. v. Vincennes Ind. Girls, Inc.*, 988 N.E.2d 250, 254 (Ind. 2013). We conclude, however, that the doctrine of claim preclusion does not apply here.

## A. Background Law

Claim preclusion serves "as a complete and categorical bar to subsequent litigation on the same claim between identical parties." *Miller v. Patel*, 212 N.E.3d 639, 646 (Ind. 2023) (internal quotation marks omitted). The purpose of claim preclusion is to prevent "the type of repeated litigation that would keep parties in interminable conflict, bog down our system, and delay or prevent the administration of justice." *In re Eq.W.*, 124 N.E.3d 1201, 1209 (Ind. 2019) (internal quotation marks omitted).

Four requirements must be satisfied for claim preclusion to apply: "(1) the former judgment must have been rendered by a court of competent jurisdiction;

(2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies." *Miller*, 212 N.E.3d at 646. A dismissal with prejudice constitutes an adjudication on the merits for the purposes of claim preclusion. *Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000, 1002 (Ind. Ct. App. 2003), *trans. denied*.

## B. Claim preclusion does not bar Bloomington from bringing its constitutional challenges in this case.

[22] Bloomington originally brought seven actions against the Auditor, one for each annexation territory, and those actions were consolidated. Around the same time that Bloomington commenced these seven actions, landowners instituted remonstration proceedings against the city regarding Areas 1A and 1B. The trial court ordered these remonstration proceedings stayed pending the resolution of the city's cases against the Auditor. Seeking to "proceed expeditiously" with the remonstration proceedings involving the landowners, Bloomington moved to voluntarily dismiss with prejudice the cases against the Auditor involving Areas 1A and 1B and to reconsolidate the remaining five cases against the Auditor. Appellant's App. Vol. XLII p. 29.

[23] The trial court granted Bloomington's motion to dismiss the cases involving Areas 1A and 1B and reconsolidated the remaining five cases. The State then argued that Bloomington's dismissal with prejudice of the cases involving Areas

1A and 1B triggered claim preclusion of the remaining five cases against the Auditor. The trial court rejected the State's argument.

[24] We conclude that claim preclusion does not apply in this case. Although the cases involving Areas 1A and 1B, which Bloomington dismissed, relied on the same general constitutional arguments as the cases on which Bloomington seeks to proceed, claim preclusion only applies to bar a "subsequent" action that is brought after the adjudication of a prior action. *Miller*, 212 N.E.3d at 646 (noting that claim preclusion "prevent[s] a plaintiff from asserting a claim that the plaintiff previously litigated and lost"); *Richter*, 790 N.E.2d at 1004 (noting that subsequent action would effectively grant plaintiff "a second bite at the apple"). Here, the original seven cases were all brought **simultaneously**. Moreover, the "matter now in issue"—the annexation of Areas 1C, 2, 3, 4 and 5—was not a matter that "was, or could have been, determined" in the cases involving Areas 1A and 1B. *Miller*, 212 N.E.3d 646. Accordingly, Bloomington's claims are not barred by claim preclusion, and we turn now to Bloomington's constitutional arguments.

## II. Bloomington lacks enforceable rights to challenge the 2019 Act under the Federal Contract Clause.

### A. The Federal Contract Clause

[25] The first clause of Article 1, Section 10 of the United States Constitution provides, in relevant part, "No state shall . . . pass any . . . Law impairing the Obligation of Contracts[.]" The clause "restricts the power of States to disrupt

contractual arrangements" and applies to "any kind of contract." *Sveen v. Melin*, 584 U.S. 811, 818 (2018). This includes contracts to which a State or municipality is a party. *See, e.g.*, *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100 (1938); 16A C.J.S. Constitutional Law § 520 ("A contract to which a state, or a subdivision thereof, is a party" is "within the constitutional prohibition of statutes impairing the obligation of contracts[.]"). And although phrased in absolute terms, "not all laws affecting pre-existing contracts" violate the Contract Clause. *Sveen*, 584 U.S. at 819.

## B. The relationship between States and Municipalities—the *Hunter* line of cases

The United States Supreme Court has long recognized that "'[m]unicipal corporations are instrumentalities of the State for the convenient administration of government within their limits.'" *Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 413 (1978) (quoting *Louisiana ex rel. Folsom v. Mayor of New Orleans*, 109 U.S. 285, 287 (1883)); *Bd. of Comm'rs of Tippecanoe Cnty. v. Lucas*, 93 U.S. 108, 114 (1876). Given this relationship between municipalities and states, "courts generally hold municipalities and political subdivisions cannot bring constitutional claims against their states." *Lake Ridge Sch. Corp. v. Holcomb*, 198 N.E.3d 715, 718 (Ind. Ct. App. 2022).

The United States Supreme Court discussed the relationship between municipalities and States in the context of the Federal Contract Clause beginning in the nineteenth and early twentieth centuries. In *Hunter v. Pittsburgh*, 207 U.S. 161, 178 (1907), the Court observed that municipalities

exercise only "such of the governmental powers of the state as may be intrusted to them." Because the state is the source of municipal power, "[t]he number, nature, and duration of the powers conferred . . . and the territory over which they shall be exercised rests in the absolute discretion of the state" notwithstanding the Federal Contract Clause.[8] *Id*.

Around the same time, the Court issued a series of decisions holding that a state does not unconstitutionally impair a municipality's contracts with private actors by passing laws that effectively relieve the private actor of contractual obligations owed to the municipality. *See City of New Orleans v. New Orleans Water-Works Co.*, 142 U.S. 79, 88-89 (1891) (holding city could not enforce Federal Contract Clause against the state because city was a "creature of the state legislature" whose "charter can be amended, changed, or even abolished at the will of the legislature," and city's contract with private company was "in reality between the state and the [] company"); *City of Worcester v. Worcester Consolidated Street Railway Co.*, 196 U.S. 539, 552 (1905) (noting that, if a municipality could enforce the Federal Contract Clause against the state, "it would very largely diminish the right of the legislature to deal with its creature in public matters, in a manner which the legislature might regard as for the public welfare"); *City of Pawhuska v. Pawhuska Oil & Gas Co.*, 250 U.S. 394, 397

---

[8] The *Hunter* Court concluded that, because a municipality is merely a subdivision of the state, a municipality's corporate charter does not constitute "a contract with the state within the meaning of the Federal Constitution." *Id.*; *see also Trenton v. New Jersey*, 262 U.S. 182, 189 (1923).

(1919) (holding that city could not enforce Federal Contract Clause against the state because the state is free to withdraw powers previously "confided" in the city).

The *Hunter* line of cases—*New Orleans*, *Worcester*, and *Pawhuska*—thus, held that, because a municipality is a governmental subunit created by the state, state action relieving private actors of their contractual obligations to the municipality does not unconstitutionally impair the municipality's contract. The state may withdraw powers conferred to the municipality—including the power to contract—and the ability to do so preserves the state's supervision of "public matters" and "the public welfare." *Worcester*, 196 U.S. at 552.

## C.  As a municipality of the State, Bloomington lacks enforceable rights against the State under the Federal Contract Clause.[9]

Bloomington recognizes that the *Hunter* line of cases "seem to prevent Bloomington from seeking relief under the Contract Clause." Appellant's Br. p.

---

[9] Bloomington uses the word "standing" to describe the basis for its authority to invoke the Contract Clauses of the Indiana and United States Constitutions. To establish standing under federal law, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024). Similarly, to establish standing under Indiana law, the plaintiff must "demonstrate a personal stake in the outcome of the litigation and show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct." *Red Lobster Restaurants LLC v. Fricke*, 234 N.E.3d 159, 167 (Ind. 2024).

Bloomington argues that it has standing here because it is directly injured—the 2019 Act invalidates many of its remonstration waivers, which frustrates the city's annexation efforts. The State does not contest that Bloomington has standing in this sense of the term. Standing, however, is not the best terminology to use in this case. Although Bloomington may have standing in the general sense, the real issue is whether

45.   Bloomington, however, argues that the Supreme Court abrogated these cases in *Gomillion v. Lightfoot*, 364 U.S. 339 (1960).  In *Gomillion*, citizens of Alabama challenged a state statute that sought to reorganize a city's boundaries so as to exclude Black voters.  The city argued in response that, pursuant to *Hunter*, the United States Constitution placed no limits on the state's ability to reorganize the boundaries of the city.  *Id*. at 342.

The Supreme Court rejected the city's argument and held that, although the *Hunter* line of cases indicates that states have broad control over their governmental subunits, a state does not have "plenary power to manipulate in every conceivable way, for every conceivable purpose, the affairs of its municipal corporations[.]"  *Id*. at 344.  Rather, the Court held that the Fifteenth Amendment places limits on the state's ability to alter the boundaries of a municipality so as to "deprive[] a citizen of his vote because of his race."  *Id*. at 345.

Contrary to Bloomington's argument, *Gomillion* did not abrogate the *Hunter* line of cases as they apply to this case.  *Gomillion* was not a case about the Contract Clause, and *Gomillion* discussed the Contract Clause only to clarify that a state's ability to reorganize municipal boundaries is not unlimited.  This Court has

Bloomington has enforceable rights against the State under the Federal and Indiana Contract Clauses under the facts of this case.

recognized that, despite *Gomillion*'s holding, "*Hunter* and its progeny . . . remain good law." *Lake Ridge Sch. Corp.*, 198 N.E.3d at 719.[10]

[33] This case, thus, falls within the *Hunter* line of cases, which held that the Federal Contract Clause does not protect municipalities from the abrogation of their contracts by the state. Accordingly, we hold that Bloomington lacks enforceable rights under the Federal Contract Clause to challenge the 2019 Act as impairing its contracts with landowners.

## III. Bloomington lacks enforceable rights to challenge the 2019 Act under the Indiana Contract Clause.

### A. The Indiana Contract Clause

[34] The Indiana Contract Clause provides, "No . . . law impairing the obligation of contracts, shall ever be passed." Ind. Const. Art. 1, § 24. This clause "protects vested contract rights." *Girl Scouts of So. Ill.*, 988 N.E.2d at 255. Like the Federal Contract Clause, the Indiana Contract Clause's prohibition against the impairment of contracts "is not an absolute one." *Clem v. Christole, Inc.*, 582 N.E.2d 780, 783 (Ind. 1991).

---

[10] *Gomillion* also relied on *Graham v. Folson*, 200 U.S. 248 (1906), which held that, although the state replaced a township with a county, the county remained responsible for township's unpaid debts to private actors. Unlike in *Graham*, here, we are concerned only with the abrogation of private actors' obligations to the municipality (the landowners' obligation to Bloomington), not the other way around.

## B. *Bolivar* and its progeny

In keeping with the United States Supreme Court, Indiana courts recognize municipalities' status as instrumentalities of the State of Indiana and the State's authority to set the boundaries of municipal powers. *See Massey v. Mishawaka*, 378 N.E.2d 14, 17 (Ind. Ct. App. 1978) ("Indiana municipal corporations are entities created by the State Legislature and possess only those powers granted to them by the State."); *Lucas v. Bd. of Comm'rs of Tippecanoe Cnty.*, 44 Ind. 524, 530 (1873), *aff'd by Bd. of Comm'rs of Tippecanoe Cnty.*, 93 U.S. 108.

Based on the relationship between the State and municipalities, our Supreme Court held in *Bolivar Township Board of Finance of Benton County v. Hawkins*, 191 N.E. 158, 165 (Ind. 1934), that state legislation eliminating debts owed by private actors to municipalities does not impair the municipalities' contracts in violation of the Indiana Contract Clause. In *Bolivar*, a township argued that the State's 1933 Relief Act unconstitutionally impaired its contract with sureties by releasing the sureties from liability for the loss of public money deposited in failed banks. In rejecting this argument, the Court noted that the township was a "creature of the Legislature" that "acts as the agent of the state . . . pursuant to statutory authority." *Id*. at 165. Thus, "[t]he real contracting party is the

state," which may "withdraw [the township's] power to so contract" and "release the liability created" without the township's consent.[11] *Id*.

[37] The Court reaffirmed *Bolivar* in *Department of Public Welfare of Allen County v. Potthoff*, 44 N.E.2d 494 (Ind. 1942), holding:

> We think it may be said, without extending the rule declared in [*Bolivar*, *Kassabaum*, *and Middleton*] that counties are political subdivisions of the state and that as such they have no vested or contractual rights in the disposition of funds derived from general taxation therein which are superior to the public policy of the state as declared by legislature.

*Id*. at 497.

## C. As a municipality of the State, Bloomington lacks enforceable rights against the State under the Indiana Contract Clause.

[38] We conclude that *Bolivar* is persuasive, if not controlling here, and that Bloomington cannot challenge the 2019 Act under the Indiana Contract Clause. *Bolivar* held that, in a contract between a municipality and a private actor, "[t]he real contracting party is the state," and that the State may "release" the obligation owed to the municipality without violating the Indiana Contract

---

[11] Notably, only two Justices joined in the *Bolivar* opinion. Justice Treanor dissented, arguing that municipalities are "not agents of the state in the sense that their acts are the acts of the state as a principal"; rather, municipalities are closer to "independent governmental units." *Bolivar*, 191 N.E. at 172. Despite the split of opinion in *Bolivar*, our Supreme Court declined to reexamine the case in *Kassabaum v. Board of Finance of Town of Lakeville*, 20 N.E.2d 642 (Ind. 1939), and *State ex. rel. Jackson v. Middleton*, 19 N.E.2d 470 (Ind. 1939).

Clause. *Bolivar*, 191 N.E. at 165. It follows here that the State is authorized to release landowners from their obligations to Bloomington and that the 2019 Act does not unconstitutionally impair Bloomington's contracts by retroactively voiding the landowners' remonstration waivers.

[39] Bloomington argues that *Bolivar* is not controlling because *Potthoff* limited *Bolivar*'s scope to issues involving "'contractual rights in the disposition of funds derived from general taxation . . . .'" Appellant's Br. p. 37 (quoting *Potthoff*, 44 N.E.2d at 497). But rather than using any limiting language, the Court in *Potthoff* noted merely that it was not "extending" *Bolivar*. *Potthoff*, 44 N.E.2d at 497. And the principles espoused in *Bolivar* indicate that the State's action here does not violate the Indiana Contract Clause.[12]

[40] Bloomington also argues that *Bolivar* was decided in a "drastically different judicial era" and, under the "modern doctrine," the city can enforce the Indiana Contract Clause. Appellant's Br. p. 38. But Bloomington cites no Indiana caselaw in support of this assertion. Moreover, as the State points out, numerous other jurisdictions reject municipalities' ability to enforce constitutional contract clause provisions against the state. *See., e.g.*, *Honors*

---

[12] Bloomington urges that Justice Treanor's dissent in *Bolivar* is correct in that municipalities cannot be agents of the State because the State is not responsible for municipal debts. *See* Appellant's Br. p. 35 ("'A principal will be liable to third persons for all acts committed by the agent on his or her behalf.'") (quoting IND. LAW ENCYC. Agency § 27). This case, however, does not concern municipal debts, and we are not convinced that the State and Bloomington must have an agency relationship in the strict legal sense for the State to exercise its authority here. It is sufficient that the State sets the boundaries of municipal powers and may expand or contract the powers conferred.

*Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 67 (Tex. 2018); *Morial v. Smith & Wesson Corp.*, 785 So.2d 1, 11 (La. 2001); *City of Plainfield v. Pub. Serv. Elec. & Gas. Co.*, 412 A.2d 759, 765 (N.J. 1980); *In re Pub. Utils. Comm'n*, 257 P.3d 223, 234-35 (Haw. Ct. App. 2011). Given the relevant caselaw in our State and the weight of authority in other jurisdictions, we conclude that Bloomington lacks enforceable rights under the Indiana Contract Clause to challenge the 2019 Act as impairing its contracts with landowners.

## IV. Even if Bloomington can enforce the Federal and/or Indiana Contract Clauses, the 2019 Act does not unconstitutionally impair the city's contracts.

[41] Although we conclude that Bloomington lacks enforceable rights to challenge the 2019 Act under the Federal and Indiana Contract Clauses, we nonetheless conclude that, even if such enforceable rights existed, the 2019 Act does not substantially impair Bloomington's contracts so as to amount to a constitutional violation.

### A. Constitutional Tests

[42] Under the Federal Contract Clause, "'[t]he threshold issue is whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Sveen*, 584 U.S. at 819 (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244 (1978)). "In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or

reinstating his rights." *Id.* We also "consider whether the industry the complaining party has entered has been regulated in the past." *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983).

[43] If substantial impairment exists, "the inquiry turns to the means and ends of the legislation. In particular, the Court has asked whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 584 U.S. at 819 (internal quotations omitted).

[44] As for the Indiana Contract Clause, like its federal counterpart, we begin by determining whether the challenged law "substantially" impairs the contract. *Girl Scouts of So. Ill.*, 988 N.E.2d at 257; *D.A.X., Inc. v. Employers Ins. of Wausau*, 659 N.E.2d 1150, 1155 (Ind. Ct. App. 1996) (noting that the "threshold inquiry" under both the Federal and Indiana Contract Clauses is "'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship'") (quoting *Energy Reserves Grp., Inc.*, 459 U.S. at 411), *trans. denied*. Our Supreme Court in *Clem*, 582 N.E.2d at 783-84, indicated that this part of the inquiry is largely the same as the federal analysis.

[45] Assuming substantial impairment exists, the second inquiry under the Indiana Constitution is whether the state law is "reasonably necessary for the protection of the health, safety, and welfare of the general public." *Clem*, 582 N.E.2d at 784. "It is only this [] *necessary* police power, rather than the *general* police power, which provides the exception to the contract clause." *Id*. (italics in original); *accord Girl Scouts of So. Ill.*, 988 N.E.2d at 257.

**B.  The 2019 Act does not substantially impair Bloomington's contracts.**

We conclude that the 2019 Act does not substantially impair Bloomington's contracts with landowners.  The contracts were principally for the extension of municipal sewer services to the landowners' properties, and the 2019 Act affects neither the ability to provide nor the payment for these services.  Although Bloomington argues that the 2019 Act frustrates its annexation efforts, the contracts with landowners were obviously not contracts for annexation.  And as the State points out, Bloomington provides municipal sewer services to "hundreds" of properties outside the city limits for which the city does not have a remonstration waiver.  Appellee's Br. p. 44.  Thus, the 2019 Act hardly "undermines the contractual bargain" to provide municipal sewer services to which Bloomington and the landowners agreed.  *Sveen*, 584 U.S. at 819.

Additionally, the 2019 Act does not intrude on a field traditionally immune from regulation.  On the contrary, the authority for municipalities to enter sewage installation contracts with adjacent property owners in the first place, including the authority to include waivers of the right to remonstrate against future annexation in those contracts, has been provided by statute since at least 1967.  Municipal annexation in general is also traditionally regulated by statute. *See* Ind. Code ch. 36-4-3.  As such, it was within the parties' "reasonable expectations," *Sveen*, 584 U.S. at 819, that the State could exercise its authority to modify municipal annexation powers over the coming years, as the State did here.  Under these circumstances, the 2019 Act does not substantially impair

Bloomington's contracts with landowners so as to violate the Federal and Indiana Contract Clauses.

[48] As for whether the 2019 Act serves a significant public purpose and constitutes an exercise of the legislature's necessary police powers, we note the State's argument that the 2019 Act protects landowners from annexation through stale remonstration waivers. We also note our Supreme Court's observation that "annexation of territory by a municipality is a matter of public policy and public interest . . . ." *Doan v. City of Fort Wayne*, 252 N.E.2d 415, 419 (Ind. 1969).

[49] Ultimately, however, because we find that the 2019 Act does not substantially impair Bloomington's contracts, we need not decide whether the 2019 Act serves a significant public purpose or constitutes an exercise of the legislature's necessary police powers. It is sufficient for the purpose of this case to conclude that Bloomington lacks enforceable rights against the State under the Federal and Indiana Contract Clauses and, even if such rights existed, the 2019 Act does not substantially impair Bloomington's contracts in the constitutional sense.

## Conclusion

[50] We hold that claim preclusion does not apply under the facts of this case. We further hold that Bloomington, as a municipality, lacks enforceable rights under the Federal and Indiana Contract Clauses to challenge the 2019 Act as impairing its contracts with the landowners. Lastly, even if Bloomington could

challenge the 2019 Act, the Act does not disturb the principal elements of the contracts at issue, and municipal annexation is a field traditionally regulated by the State. The 2019 Act, thus, does not substantially impair Bloomington's contracts under the Federal or Indiana Contract Clauses. We, therefore, affirm the trial court's grant of partial summary judgment to the State.

Affirmed.

May, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Margie K. Rice
City of Bloomington
Bloomington, Indiana

Andrew M. McNeil
Stephen C. Unger
Jacob T. Antrim
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR INTERVENOR

Theodore E. Rokita
Attorney General of Indiana

James A. Barta
Solicitor General

Katelyn E. Doering
Deputy Attorney General
Indianapolis, Indiana